VENABLE LLP
Justin E. Pierce (appearing *pro hac vice*)
jepierce@venable.com
600 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 344-4442
Facsimile: (202) 344-8300

Tamany Vinson Bentz (SBN 258600)
tjbentz@venable.com
Matthew J. Busch (SBN 307396)
mjbusch@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Kimberly Culp Cloyd (SBN 238839)
kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

Attorneys for Plaintiffs PUMA SE and PUMA NORTH AMERICA, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

PUMA SE, a German company; and PUMA NORTH AMERICA, INC., a Delaware corporation,

Plaintiffs,

v.

FOREVER 21, INC., a Delaware corporation,

Defendant.

CASE NO. 2:17-cv-02523-PSG-E

Honorable Philip S. Gutierrez

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: June 12, 2017
Time: 1:30 p.m.
Courtroom: 6A

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on June 12, 2017, at 1:30 p.m., or as soon as thereafter as counsel may be heard, in Courtroom 6A, before the Hon. Philip S. Gutierrez, in the above-entitled Court, 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Puma SE and Puma North America, Inc. (collectively, "Puma") will, and hereby do, move for a preliminary injunction to enjoin Defendant Forever 21, Inc. ("Defendant"), and its officers, agents, servants, employees and attorneys, and all those in active concert or participation with Defendant from:

(a) Producing, selling, offering for sale, distributing, advertising, providing, or promoting any goods incorporating Puma's intellectual property, or that so resemble Puma's intellectual property as to be likely to cause confusion, mistake, or deception;

(b) Using any word, term, symbol, or any combination thereof, or any false designation of origin, false or misleading description of fact, which in commercial advertising or promotion misrepresents the nature, characteristics, qualities, sponsorship or affiliation of Defendant's goods or services; and

(c) Infringing in any manner, Puma's intellectual property, in particular all iterations of Forever 21's shoes in style of Puma's "Creeper" sneaker and "Fur Slide" and "Bow Slide" sandals offered under Puma's Fenty label (which includes at least Forever 21 product numbers 2000083250, 2000084536, 2000089223, 2000105390, 2000190304, 2000268434, 2000305398, and 2000322104).

This Motion is made on the following grounds:

1. Defendant's Yoki Flatform Sneakers, Faux Suede Flatform Sneakers, Faux Fur Slide, Yoki Faux Fur Slide and Satin Bow Slide are copies or counterfeits of Puma's "Creeper," "Fur Slide" and "Bow Slide" shoes offered under Puma's Fenty label (the "Fenty Shoes").

2. Puma first learned of Defendant's infringing conduct on or about March 25, 2017, after Defendant released its "Satin Bow Slides." Subsequently, Puma discovered that Defendant was also knocking off Puma's "Creeper" and "Fur Slide." Puma took action quickly thereafter, and filed a complaint on March 31, and motion for temporary restraining order on April 5, 2017, the same day Defendant refused to cease and desist its infringement.

3. Puma has a substantial likelihood of success on the merits of its claims against Defendant for trade dress infringement, copyright infringement, and design patent infringement, all based on Defendant's advertising, offering for sale, sale or other distribution of shoes that infringe Puma's intellectual property rights.

4. Puma will suffer irreparable injury in the absence of a preliminary injunction because Defendant's knockoffs tarnish Puma's goodwill by flooding the market with copies of inferior product that Puma distributes only in limited supply and convert sales. Defendant has shown no signs of ceasing this practice, which is of immediate concern due to the imminent releases of Puma's newest Fenty models.

5. The balance of hardships weighs decidedly in Puma's favor, as Puma could lose brand goodwill with the public, other copycats may feel emboldened to trade on Puma's intellectual property, or Puma may find it difficult to partner with brand ambassadors, such as Rihanna.

6. The public interest strongly favors the issuance of a preliminary injunction in these circumstances, as Defendant's entire business model runs contrary to the public interest by misappropriating skills, creative energies, and resources which are invested in copyrighted works and by purposefully creating and profiting from consumer confusion.

This Motion is made pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 and is based on the accompanying Memorandum of Points and Authorities, the declarations of Adam Petrick and Matthew J. Busch attached

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

hereto, and the accompanying Proposed Order.

DATED: April 11, 2017 VENABLE LLP

By: /s/ Tamany Vinson Bentz
Justin E. Pierce (appearing *pro hac vice*)
Tamany Vinson Bentz
Matthew J. Busch
Kimberly Culp Cloyd
Attorneys for Plaintiffs Puma SE and Puma North America, Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1
II. STATEMENT OF FACTS ....... 3
A. The Fenty Shoes ....... 3
B. Defendant's Unauthorized Use of the Fenty I.P. ....... 5
III. ARGUMENT ....... 9
A. Puma Will Suffer Irreparable Harm If an Injunction is Not Granted ....... 10
B. Puma is Likely to Prevail on the Merits of its Trade Dress Claim ....... 12
1. Puma's Trade Dress Is Non-functional ....... 13
2. The Fenty Trade Dress is Source Identifying ....... 13
3. The Likelihood of Confusion Is Substantial ....... 15
a. Defendant's Knock-offs Are Nearly Identical to the Fenty Trade Dress ....... 15
b. The Fenty Trade Dress Is Strong ....... 16
c. The Fenty Shoes and Defendant's Shoes Compete Directly ....... 17
d. Puma and Defendant Use the Same Marketing Channels ....... 17
e. Consumers Are Unlikely to Discern Differences Between the Fenty Shoes and Defendant's Shoes ....... 19
f. Defendant Intentionally Copied the Fenty Trade Dress ....... 19
g. Actual Confusion Is Not Necessary ....... 20
C. Puma Will Likely Prevail on the Merits of its Copyright Claim ....... 21
D. Puma Will Likely Prevail on the Merits of its Patent Claim ....... 22
E. The Balance of Hardships Favors Granting this Motion ....... 23
F. Public Interest Favors an Injunction ....... 24
IV. CONCLUSION ....... 25

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ....................15, 17, 20

*Brookfield Commc'n's, Inc. v. West Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ....................16

*Clicks Billiards, Inc. v. Sixshooters Inc.*,
251 F.3d 1252 (9th Cir. 2001) ....................12, 15, 19

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) ....................23

*Dreamworks Prod. Group, Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) ....................15

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)....................22

*Feist Publications v. Rural Telephone Service Co.*,
499 U.S. 340 (1991)....................21

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
111 F.3d 993 (2d Cir. 1997)....................16

GoTo.com, Inc.,
202 F.3d at 1205 ....................15, 17

*Gucci Am., Inc. v. Los Altos Boots, Inc.*,
No. CV1406680BROAJWX, 2014 WL 12561613 (C.D. Cal. Aug. 27, 2014)....................24

*Kelly v. Primco Mgmt., Inc.*,
No. CV1407263BROSHX, 2015 WL 10990368 (C.D. Cal. Jan. 12, 2015)....................23

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
799 F.2d 867 (2d Cir. 1986)....................20

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
590 F. Supp. 2d 1271 (C.D. Cal. 2008) ....................24

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
514 U.S. 159 (1995)....................13

*Reebok Int'l Ltd. v. Sung Hwa Int'l Corp.*,
No. 87 CIV. 7015 (JFK), 1987 WL 27684 (S.D.N.Y. Dec. 10, 1987) ....................20

*Sharper Image Corp. v. Target Corp.*,
425 F. Supp. 2d 1056 (N.D. Cal. 2006) ..... 13

*St. Ives Lab's., Inc. v. Nature's Own Lab's.*,
529 F. Supp. 347 (C.D. Cal. 1981) ..... 13

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
No. 15-866, 2017 WL 1066261 (U.S. Mar. 22, 2017) ..... 21

*Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*,
2005 U.S. Dist. LEXIS 4581 (N.D. Cal. Mar. 23, 2005) ..... 16

*Vision Sports, Inc. v. Melville Corp.*,
888 F.2d 609 (9th Cir. 1989) ..... 13

*Wal-Mart Stores Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) ..... 13

*Warner Bros. Entertainment, Inc. v. WTV Systems, Inc.*,
824 F. Supp. 2d 1003 ..... 9, 24

*Warner Bros. Entertainment v. Global Asylum, Inc.*,
Case No. CV 12-9547 PSG, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) ..... 20

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ..... 9

**STATUTES**

15 U.S.C. § 1125(a) ..... 12

Lanham Act Section 43(a) ..... 20

**OTHER AUTHORITIES**

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:99,
4th Ed. (2017) ..... 19

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Forever 21, Inc. ("Forever 21" or "Defendant") is a serial infringer of intellectual property and is commonly known as a notorious copycat of new designs. Forever 21, in fact, has been sued over 100 times for intellectual property infringement. Another federal court in a similar case noted that the number of times Forever 21 has been sued "raises the most serious question as to whether [Forever 21] is a business that is predicated in large measure on the systematic infringement of competitors' intellectual property." Declaration of Matthew Busch in Support of Puma SE and Puma North America, Inc.'s (collectively, "Puma") Motion for a Preliminary Injunction ("Busch Decl.") ¶ 6.

Puma first learned of Forever 21's infringement of its intellectual property on or about March 25, 2017, when Forever 21 released its copycat "Satin Bow Slides." Puma then learned the full extent of Forever 21's infringement encompassed other Puma Fenty shoes, including Forever 21's ongoing sale of Puma "Creeper" and "Fur Slide" knockoffs. Puma took action quickly thereafter, and filed a complaint on March 31, and a motion for temporary restraining order on April 5, 2017, the same day Forever 21 refused to cease and desist its infringement.

This case is yet another example of Forever 21's systematic infringement of intellectual property rights – Forever 21 is intentionally selling knock-offs of Puma's Fenty brand shoes so that it can unfairly profit from Puma's good will and Puma's marketing efforts to promote the designs.

Forever 21's infringement of the exclusive Puma rights irreparably harms Puma's goodwill and reputation with its consumers. Puma intentionally produces a limited quantity of each Fenty shoe to ensure that the Fenty shoes maintain a reputation of an exclusive, luxury brand shoe. Puma's marketing and production strategies also create desirability not only for the Fenty brand shoes but for the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Puma brand as a whole. When the Fenty shoes are associated with a cheap mass market product they are no longer regarded as a luxury item and they lose their brand appeal to consumers and so does the Puma brand as a whole.

For example, Puma invested significant resources in marketing the "Satin Bow Slide" and tying the launch to the press cycle for Paris Fashion Week. Forever 21 swooped in and capitalized on Puma's efforts and most importantly mass distributed an identical knock-off of an exclusive luxury good. Forever 21's actions damaged the Puma brand and the Fenty brand in a way that cannot be compensated by monetary damages because the harm is not quantifiable. For instance, Puma has already seen a lower-than-expected conversion of sales of other Puma shoes in connection with the release of the "Satin Bow Slide" as a result of the knock-off shoes.

Puma's Fenty shoes are protected by multiple forms of intellectual property, which Forever 21 has blatantly infringed. As discussed below, it is likely that Puma will win on all its intellectual property claims because the Forever 21 knock-offs are virtual, albeit lower quality, copies of Puma's Fenty brand shoes.

Puma just released an update to the "Creeper" and, in the next few weeks, Puma will release a scheduled update to its "Fur Slide" sandal. Given Forever 21's penchant for copying each and every iteration of the Fenty shoes, including past versions of the Creeper and Fur Slide, and Forever 21's most recent exploitation of the Fenty by Puma Bow Slide, Puma needs a preliminary injunction preventing Forever 21's continued and future infringement of Puma's intellectual property. Prior to filing this Motion, Puma requested that Forever 21 cease selling the accused shoes and agree to refrain from selling new infringing designs while the merits of this case are resolved. Puma not only expressly refused to do so, it affirmatively reserved it rights to reorder infringing shoes that had sold out. Busch Decl. ¶ 18.

Thus, without a preliminary injunction Forever 21 will be able to continue

its pattern of infringement and capitalize on upcoming launches for the Puma Fenty shoes to the significant detriment of the Puma brand. Puma respectfully requests that the Court grant its Motion for a Preliminary Injunction.

## II. STATEMENT OF FACTS

### A. The Fenty Shoes

Since December of 2014, world-renowned music artist, Rihanna, has acted as the Women's Creative Director for Puma clothing and footwear. In this capacity, Rihanna has served as brand ambassador for Puma's "Fenty" label. The Fenty products are luxury products and, therefore, Puma keeps the volumes small and limits the sales to create desirability not only for the Fenty products but for the Puma brand as well. Puma times the release of the Fenty products so as to generate the most marketing "buzz", including timing distribution around international fashion weeks.

As part of this footwear line, Puma developed and launched the Puma by Rihanna "Creeper" Sneaker (herein, the "Creeper") in 2015. The overall design of the shoe, including suede uppers, and a thick rubber outer sole consisting of ridged tooling and grainy texture renders the "Creeper" visually distinguishable from other footwear on the market. *See* Dkt. 13 First Amended Complaint ("FAC") at 8.

Since its launch, the distinctive Creeper has achieved immense popularity and acclaim, and routinely sells out within minutes of the launch of each new version due to overwhelming demand. Declaration of Adam Petrick in Support of Puma's Motion for a Preliminary Injunction ("Petrick Decl.") ¶ 10. The latest update of the Creeper was released on April 6, 2017. *Id*. Puma invested significant resources in marketing the new Creeper and its recent release has been well-publicized. *Id*. Rihanna, herself, is a vital brand ambassador who regularly promotes the release of her new shoes on her social media accounts, such as Twitter where she has 70.8 ***million*** followers. Busch Decl. ¶ 2.

Following the success of the "Creeper," Puma and Rihanna launched the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

"Fur Slide" sandal in April 2016. The "Fur Slide" is a slip-on shoe which features a plush fur side strap with a satin foam backing. Dkt. 13 (FAC) ¶ 10. Like the "Creeper", the "Fur Slide" is also updated periodically, and the next update will be imminently released. Petrick Decl. ¶ 11. Puma has also invested significant resources marketing the "Fur Slide" update. *Id*. On release days for the "Creeper", consumers have lined up in front of Puma's stores to ensure their purchase of the most recent "Creeper." *Id*. at 10.

Puma released the "Bow Slide" on March 9, 2017. Petrick Decl. ¶ 15. The "Bow Slide" is also a slip-on shoe which incorporates a casually knotted satin bow atop the side strap in addition to satin foam backing. Dkt. 13 (FAC) at ¶ 10. The "Bow Slide" is currently sold in two colors – "silver pink" and "olive branch." Puma invested significant resources in marketing that specific shoe and tying the launch to the press cycle for Paris Fashion Week. Petrick Decl. ¶ 15.

Puma's "Creeper" sneaker and "Fur Slide" and "Bow Slide" sandals (collectively, the "Fenty Shoes") have enjoyed substantial and noteworthy success, and are currently being sold in both brick-and-mortar stores and online retailers such as Neiman Marcus, Nordstrom's, Urban Outfitters, and Bloomingdales, among others. Petrick Decl. ¶ 9.

The Fenty Shoes have received numerous accolades over the years including the Fenty Creeper being referred to as "the Most Desirable Shoe of 2016" by Footwear News. Petrick Decl. ¶ 6. The Fenty Shoes have also received substantial unsolicited media attention including in such publications as Vanity Fair, W Magazine, Allure, Vogue, and Harper's Bazaar. *Id*. ¶ 7.

The Puma product line benefits from a positive "halo effect" from the Fenty Shoes and, therefore, the demand for Fenty Shoes helps increase demand for the Puma brand generally. Petrick Decl. ¶ 18. When the Fenty Shoe line is damaged by knock-offs or becomes less exclusive due to knock-offs, the entire Puma brand suffers and the prestige of the Puma brand is diminished. *Id*.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

In addition, Rihanna's support of the brand on her own social media account reaches millions of viewers. For instance, one tweet on March 6, 2017, before and in reference to the Fenty by Puma Paris Fashion show received 7,000 "retweets" and was "loved" over 22,000 times. Busch Decl. ¶ 2. Other similar tweets received similar widespread attention. *Id.* Rihanna's fans – including followers on her Twitter, Instagram, Facebook, and Snapchat accounts – are naturally a key target consumer-base of the Fenty Shoes. Petrick Decl. ¶ 8.

The Fenty Shoes are produced and sold in limited quantities. Petrick Decl. ¶ 19. Demand for the Fenty Shoes is extreme and especially extreme on days that the shoes launch. The days the Fenty Shoes launch are often the days that Puma receives the most traffic to its website. *Id*. For example, the "Creeper" shoes sell out within minutes of being posted online. Busch Decl. ¶ 12.

**B. <u>Defendant's Unauthorized Use of the Fenty I.P.</u>**

Puma first learned of Forever 21's infringing conduct on or about March 25, 2017, after Forever 21 released its "Satin Bow Slides." Petrick Decl. ¶ 3. Puma then discovered that the full extent of Forever 21's infringement included previous knock offs of Puma's "Creeper" and "Fur Slide." *Id*.

These repeated acts of infringement of the Fenty Shoes are not without precedent. Indeed, the Defendant's business model is based on trading-off of the established goodwill of reputable, name-brand companies, such as Puma. According to Defendant's website, it is "the 5th largest specialty retailer in the United States." Busch Decl. ¶ 3. One copyright expert was previously reported that "Forever 21 is the one who treats liability as a cost of doing business" and that "[i]llegal copying has been incorporated into their business model." *Id*. at ¶ 4. Moreover, an August 29, 2016 article from "The Fashion Law" notes that Defendant had been sued for more than 100 copyright lawsuits and is "one of the fashion industry's most notorious copycats." *Id*. at ¶ 5. Indeed, Magistrate Judge Dolinger, of the Southern District of New York, noted in an order that "the

extraordinary litigating history of [Forever 21], … raises the most serious question as to whether it is a business that is predicated in large measure on the systematic infringement of competitors' intellectual property." *Id*. at ¶ 6.

In an attempt to ride the coattails of Puma's substantial success with the Fenty Shoes, Defendant uses the "Creeper", "Fur Slide", and "Bow Slide" trade dresses (collectively, the "Fenty Trade Dress") to offer for sale, distribute, market, and/or sell competing shoes that are confusingly similar to the Fenty Shoes, and infringe Puma's Copyrights and Design Patent. A side-by-side comparison of Defendant's infringing shoes with the Fenty Shoes tells the whole story:

| **"PUMA x Rihanna Creeper Suede"** | **Defendant's "Faux Suede Flatform Sneakers" and "Yoki Flatform Sneakers"** |
|---|---|
| | |
| **"PUMA x Rihanna Creeper Velvet (grey)"** | **Defendant's "Velvet Low-Top Sneakers Grey"** |
| | |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900



| "PUMA x Rihanna Creeper Velvet (Royal Purple)" | Defendant's "Velvet Low-Top Sneakers Rose" |
|---|---|
| | |
| **"PUMA x Rihanna Creeper Velvet (Black)"** | **Defendant's "Velvet Low-Top Sneakers Black"** |
| | |
| **"PUMA The Fur Slide Black"** | **Defendant's "Yoki Fur Slides Black"** |
| | |
| **"PUMA The Fur Slide Pink"** | **Defendant's "Faux Fur Slides Blush"** |
| | |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900



| "PUMA The Fur Slide White" | Defendant's "Yoki Faux Fur Slides" |
|---|---|
| "PUMA Bow Slide Silver Pink" | Defendant's "Bow Slide Dusty Pink" |
| "PUMA Bow Slide Silver Olive Branch" | Defendant's "Bow Slide Olive" |

Defendant is currently selling near copies of the Fenty Shoes through, at least, its website. Busch Decl. ¶ 7. Defendant knows, or should know, that it is trading on Puma's brand because Defendant uses the same name and the same color description, for its copycat shoe as Puma (*i.e.*, olive bow slide, fur slide).

Defendant has also timed the release of its own copies to capitalize on the timing of Puma's release of its own shoe. For example, Puma released the Fenty by Puma Bow Slide on March 9, 2017 and within approximately 1-2 weeks Defendant was offering its own copycat shoe of that very design in the same two colors. Petrick Decl. ¶ 25; Busch Decl. ¶ 7. Almost immediately after Defendant's introduction of its own copy, consumers began to notice and comment on the copy, and the story was then picked up by mainstream news sources. Busch Decl. ¶ 13.

Defendant continued to sell its copy shoe and, apparently, sold through its entire stock of select fur slides. Busch Decl. ¶ 8.

Defendant knows, or should know, that it is exploiting Puma's release of the Fenty by Puma "Bow Slide" because at least some of Defendant's own customers recognize that they are buying a knock-off of the Fenty by Puma "Bow Slide." Busch Decl. ¶ 9.

- Padded insole, textured outsole
- Shell: 100% rayon

F21Satin Bow Slides

4.0 (based on 1 review)

Write a Review

4.0 3/28/2017

Narrow Fit Cute Look!

BY SLEEPYGIRL02
FROM PORTLAND OR
SEE ALL MY REVIEWS

Comments about F21 Satin Bow Slides:

I love these shoes! They're like the fenty pumas but the price that's worth the style purchase cause they won't be in forever ladies!
NARROW FIT but with the help of shoe horns my toes will find relief. Worth the purchase

## III. ARGUMENT

This Court should enter a preliminary injunction against Forever 21 because there is: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of hardships favors Puma; and (4) that an injunction would be in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Warner Bros. Entertainment, Inc. v. WTV Systems, Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011).

A preliminary injunction should issue under these standards for the reasons described below.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

### A. <u>Puma Will Suffer Irreparable Harm If an Injunction is Not Granted</u>

"Fast fashion" refers to the practice of rapidly translating high fashion design trends into low-priced garments. Busch Decl. ¶ 11. Forever 21's business model is, notoriously, considered fast fashion. *Id*. at ¶ 5. The fast fashion market takes designs from high-end brands that may be announced at fashion shows, for instance, and offer similar or identical designs with the intent to trade on the goodwill and publicity surrounding a name brand design. The brand, like Puma, invests funds and resources in marketing and promoting the design and fast fashion brands get the benefit because the brand's investments drive sales and attention to the copycat design. Fast fashion knockoffs, like Forever 21, both convert some sales the original brand would receive (because of consumer confusion) and also tarnish the original brand's goodwill by flooding the market with copies of what otherwise would have been an exclusive product. *See* Petrick Decl. ¶¶ 4-5.

Because fast fashion clothing, such as Forever 21's products, are made of inferior resources they are able to keep costs low. Petrick Decl. ¶ 3. In these cases, the fast fashion market injures fashion as a whole and specifically the brands who are knocked-off by depressing sales volume and prices. *See* Petrick Decl. ¶ 5. Even more significantly, though, those brands whose designs are knocked-off lose perceived value in the market for their entire brand because their design look becomes associated with a cheaper, lower-quality product and is no longer exclusive. *Id*.

Specifically, here, Puma's shoes are sold in certain select retail outlets and online. Petrick Decl. ¶ 9. Demand for the Fenty Shoes is extreme and especially extreme on days that the shoes launch. The days the Fenty Shoes launch are often the days that Puma receives the most traffic to its website. *Id*. ¶ 19.

In September 2016, Rihanna and Puma debuted the Spring 2017 Fenty by Puma collection, which included the Fenty by Puma Bow Slide. Petrick Decl. ¶

12. On March 6, 2017, Rihanna and Puma held a successful Fenty by Puma fashion show during Paris Fashion Week. *Id*. ¶ 15. That fashion show received widespread press coverage. *Id*. Three days later, on March 9, 2017, Rihanna's Fenty by Puma Bow Slide went on sale in the United States. *Id*. Puma intentionally timed the release of this shoe to coincide with the press coverage from Paris Fashion Week in order to maximize the publicity for the release of the Fenty by Puma Bow Slide. *Id*.

The period immediately following the release of a highly anticipated shoe, such as the Fenty shoes, is a critical time for Puma. Petrick Decl. ¶ 16. With every product this period of excitement and energy will die down, but it will die down faster when there are knock-off products, such as Forever 21's knock-offs, for sale at the same time. *Id*. Puma cannot recreate this excitement and the opportunity is lost for its customers to receive an exclusive and elusive fashion product. *Id*. Knock-offs diminish the brand value for Puma's consumers, because they (or, their friends) can purchase almost the same-looking product, of albeit poorer quality, for less money. *Id*. ¶ 17. Ultimately, the value of the Puma and Fenty brand is also harmed because Puma is unable to control its initial period of exclusivity. *Id*.

The Puma product line in turn benefits from a positive "halo effect" from the Fenty Shoes – the demand for Fenty Shoes helps increase demand for the Puma brand generally. When the Fenty Shoe line is damaged by knock-offs or becomes less exclusive due to knock-offs, the entire Puma brand suffers and the prestige of the Puma brand is diminished. Petrick Decl. ¶ 18.

Forever 21 waited until after Puma released the Fenty by Puma Bow Slide to release their own knock-off. Consumers who want to purchase Rihanna's Fenty by Puma Bow Slide, for instance, need only enter a search term into a web search engine to find images of the shoe and places to buy the shoe. Petrick Decl. ¶ 20. The presence of knock-off shoes both drives traffic away from the Fenty Shoes (because it cheapens the look of that product), and also drives consumers away

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

from the other Puma shoes they would otherwise buy in lieu of a Fenty Shoe. *Id.*

Some customers who have seen the hype for the authentic shoe may mistakenly believe that they have purchased the real shoe. Petrick Decl. ¶¶ 21, 24, and 26. Other consumers will be discouraged from buying the authentic shoe because of the ready availability of the cheaper copycat. *Id*. This discouragement, in turn, leads to long-lasting, irreparable harm to Puma's brand. *Id*. Puma has already seen a lower-than-expected conversion of sales of other Puma shoes in connection with the release of Fenty Bow Slide as a result of the knockoff shoe, suggesting too that there is immeasurable, and irreparable, harm being done to the brand's image. *Id*. ¶ 22.

Puma released the latest "Creeper" shoe on April 6, 2017 and will release its latest "Fur Slide" in the near future. Petrick Decl. ¶¶ 10-11. Forever 21's past practice of selling near identical copies of the Fenty Shoes on the heels of those shoes being first released to the market irreparably harm's Puma and Fenty's brand image as an exclusive, luxurious, premier, fashion-forward clothing item. *Id*. ¶ 26. The only way to protect the reputation of these brands is to enjoin Forever 21 from selling their knock-off products – now and in the future. This is particularly true with respect to the upcoming release of Puma's Fur Slides.

**B. <u>Puma is Likely to Prevail on the Merits of its Trade Dress Claim</u>**

Section 43(a) of the Lanham Act protects a product's trade dress from infringement. 15 U.S.C. § 1125(a). "Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (internal citations omitted). To prevail on a claim for trade dress infringement, Puma must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role; and (3) that Defendant's product creates a likelihood of consumer confusion. *Id*. at 1258. "[A]doption of a trade dress confusingly similar to a

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

competitor's constitutes unfair competition that is actionable under ... the Lanham Act." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989). As the Ninth Circuit has emphasized, the dress must be considered as a whole rather than as separate distinct elements. *Clicks Billiards, Inc.*, 251 F.3d at 1259.

1. Puma's Trade Dress Is Non-functional

Trade dress protection covers design features that are not essential to the use or purpose of the article and that do not affect its cost or quality. *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). Here, Puma's shoes include particular combinations of playful elements that are not required for the actual function of the shoe and serve to distinguish the Fenty Shoes from other designer shoes available to consumers. Petrick Decl. ¶ 28. For instance, shoes do not require "olive branch" colored satin bows, plush fur straps, or even vertical ridge lines on outer soles. As described more fully in the First Amended Complaint, the Fenty Shoes contain distinguishing, non-functional features. *See* FAC *generally*.

2. The Fenty Trade Dress is Source Identifying

Puma is widely recognized as the source of the imaginative Fenty Trade Dress and it has acquired secondary meaning. *See Wal-Mart Stores Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-213 (2000) (product design is entitled to protection as unregistered trade dress upon showing that it has acquired secondary meaning).

Puma may establish secondary meaning by showing an association made by actual purchasers between the Fenty Shoes' appearance and their source, the length and nature of use of the design and whether such use has been exclusive, and the nature and extent of its advertising. *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1073 (N.D. Cal. 2006). Evidence of intentional copying is also highly probative of secondary meaning. *St. Ives Lab's., Inc. v. Nature's Own Lab's.*, 529 F. Supp. 347, 349-50 (C.D. Cal. 1981) ("[d]efendant's deliberate and close copying of the Plaintiff's trade dress, alone, is sufficient to establish secondary

meaning in the Plaintiff's trade dress") *citing Faberge, Inc. v. Saxony Prod's, Inc.*, 605 F.2d 426, 428 (9th Cir. 1979). An analysis of these factors shows there is secondary meaning in this case.

First, the media and consumers alike have commented on the confusing similarities between Puma's Fenty Trade Dress and Defendant's shoe designs. Even Defendant's own customers recognize that they are buying a knock-off of the Fenty by Puma "Bow Slide." Busch Decl. ¶ 13. In describing Defendant's "Bow Slide," one Twitter user noted "is forever 21 tryna put Rihanna and puma out of business." Another Twitter user remarked, "Wow. Forever21 already duping the Puma Fenty by Rihanna pink bow slides. *Id*. These references by consumers demonstrate just how strong the association is between the Fenty Trade Dress and Puma. Some, less discerning consumers, are likely to be confused by Defendant's close copying.

Second, the association between the Fenty Trade Dress and Puma is not accidental. Puma invested significant resources in cultivating that association. Puma has specifically expended approximately 25-30 million Euro (approximately 27-32 million in U.S. dollars) on marketing and designing the Fenty Shoes. Petrick Decl. ¶ 13. During that time, the Fenty Shoes have received extensive and favorable press coverage, including in Vanity Fair, Vogue, and Harper's Bazaar. Petrick Decl. ¶ 7. The Fenty shoes have also been prominently featured during Paris Fashion Week. Petrick Decl. ¶ 15. Rihanna herself has featured her shoes prominently on her Twitter account to millions of her fans. Petrick Decl. ¶ 8.

Third, some of the Fenty Shoes have been on the market for a significant amount of time and have been exclusively sold by Puma. The Fenty "Creeper" originally launched in September 2015 and the Fenty Fur Slide launched in April 2016. Puma maintains an aggressive international campaign to protect its rights and recently obtained an injunction in Germany against Top Shop preventing it from selling the very same Fenty Shoes at issue this litigation. Busch Decl. ¶ 14.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Finally, the timing of Defendant's release of its knock-off bow slide indicates it is intentionally targeting Puma's shoes. It was not a coincidence that Defendants launched their knock-off within merely days of Puma launching its originally designed shoe.

3. The Likelihood of Confusion Is Substantial

There can be no doubt that both retailers and consumers have been confused about the origin of the Defendant's products, and that further confusion is likely. Likelihood of confusion is "the most important element" of the three-part test for trade dress infringement. *Clicks Billiards, Inc.*, 251 F.3d at 1264-65. This element of the test is met when "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the goods or services." *Dreamworks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Whether confusion is likely is determined using the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These eight factors are: (1) the similarity of the dress; (2) the strength of the plaintiff's dress; (3) the relatedness or proximity of the goods; (4) the marketing channels used by each party; (5) the degree of care likely to be exercised by purchasers; (6) the defendant's intent in selecting the dress; (7) evidence of actual confusion, and (8) the likelihood of expansion of the parties product lines. *Id.*

a. Defendant's Knock-offs Are Nearly Identical to the Fenty Trade Dress

The similarity of the trade dress "has always been considered a critical question in the likelihood of confusion analysis." *GoTo.com, Inc.*, 202 F.3d at 1205. Similarities between the two products are more probative than differences. *AMF Inc.*, 599 F.2d at 351. Here, Defendant's accused sneakers are nearly identical to Puma's Creeper. Each consists of a lace-up sneaker with suede uppers, a thick rubber outer sole consisting of ridged vertical tooling and grainy texture with a

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

rubber ridge encircling the entire shoe immediately above the vertical ridged tooling, and a deep "C"-shaped bowl for the foot to slide into. *See* supra 6.

Similarly, Defendant's "Fur Slide" is nearly identical to Puma's "Fur Slide." Each consists of a thick sandal base with a wide plush fur strap extending to the base of the sandal, and a deep bowl for the foot. *See* supra 7.

Finally, Defendant's "Bow Slide" and Puma's "Bow Slide" are virtually identical. Each consists of a thick sandal base with a wide fabric strap extending to the base of the sandal, and a deep bowl for the foot. Defendant also wholly reproduces Puma's casually knotted fabric bow with pointed endings and Defendant's "olive" and "dusty pink" color options. *See* supra 7-8.

Because the products are nearly identical in appearance, this factor supports a finding a likelihood of confusion.

b. The Fenty Trade Dress Is Strong

In determining the strength of a trade dress, a court considers the distinctiveness of the trade dress, the duration of use, the volume of products sold under the trade dress, and the amount spent on advertising and promoting the trade dress. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003 (2d Cir. 1997); *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 U.S. Dist. LEXIS 4581, at *30 (N.D. Cal. Mar. 23, 2005). The stronger the trade dress, the more protection it is afforded. *Brookfield Commc'n's, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999).

As discussed above, the Fenty Trade Dress is strongly associated with Puma by the purchasing public, and it has acquired distinctiveness through secondary meaning. The Fenty Trade Dress has become so associated with Puma that the media and consumers alike have commented on the confusing similarities between Puma's Fenty Trade Dress and Defendant's shoe designs. Busch Decl. ¶ 13.

The Fenty Trade Dress has been in use continuously and during that time Puma has sold every unit it has offered for sale. Puma has spent approximately

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

25-30 million Euro (approximately 27-32 million in U.S. dollars) on marketing and designing the trade dress, and the Fenty Trade Dress has received substantial press coverage in a wide range of media outlets.

These considerations support a finding that the Fenty Trade Dress is exceptionally strong trade dress, and a finding that confusion is likely.

c. The Fenty Shoes and Defendant's Shoes Compete Directly

If the goods at issue are related, there is more danger that the public will assume that there is an association between them and, thus, be confused. *AMF Inc.*, 599 F.2d at 350. Here, the products are nearly identical in appearance and are sold for the same purpose. They are also all sold online. Petrick Decl. ¶ 9. Indeed a search for "pink bow slides" reveals images of the original Fenty by Puma Bow Slide next to the Defendant's knockoff.[1] Busch Decl. ¶ 15. The fact that these products are in direct competition weighs heavily in favor of affording the Fenty Trade Dress greater protection and supports a finding that confusion is likely.

d. Puma and Defendant Use the Same Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." *AMF Inc.*, 599 F.2d at 353 (internal citations omitted). Puma and Defendant promote their shoes through the same digital media channels. Petrick Decl. ¶¶ 8-9. Frankly, it would be near impossible for online shoppers looking to purchase the Fenty Shoes to avoid Defendant's knockoffs. Courts have consistently recognized that using the internet as a marketing and advertising facility exacerbates likelihood of confusion. *See GoTo.com*, 202 F.3d at 1207 ("We now reiterate that the Web, as a marketing channel, is particularly

[1] A second knockoff is visible – the Top Shop – which, as discussed, Puma has already obtained an injunction against in Germany and is continuing to pursue enforcement against. Busch Decl. ¶ 14.

susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen.”).

Not surprisingly, until Defendant sold through its stock of counterfeit shoes, a web search for “pink bow slides” returns results for both products in immediate proximity. Busch Decl. ¶ 15.




A search for “puma fur slide” yields similar results. Busch Decl. ¶ 15.




Evidence showing such substantial overlap in the companies’ marketing channels is highly probative of a likelihood of confusion.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

e. Consumers Are Unlikely to Discern Differences Between the Fenty Shoes and Defendant's Shoes

The price point difference between the Fenty Shoes and Defendant's shoes does not reduce consumer confusion. Indeed, recognition that high-quality designer goods have a sophisticated and brand conscious buyer base does not necessarily mean that those people are not likely to be confused by imitations. 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:99, 4th Ed. (2017) (citing *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 170 (2d Cir. 1991)). Rather, it may be that such persons are those who are most likely to notice trade dress embellishments, spot them in an imitation and assume that there is some sort of association or affiliation between the manufacturers. *Id*. Accordingly, this factor makes confusion more likely.

Moreover, Defendant further attempts to trade-off of Puma's goodwill by referring to its slide as an "independent brand and not a Forever 21 branded item" on Forever 21's Pinterest board. Busch Decl. ¶ 10; Petrick Decl. ¶ 14.

f. Defendant Intentionally Copied the Fenty Trade Dress

Evidence of intentional copying of Puma's trade dress gives rise to a presumption that Defendant accomplished its goal – namely, deceiving the purchasing public into believing Puma's Fenty Shoes are associated with Defendant's shoes. *Clicks Billiards, Inc.*, 251 F.3d at 1266; *AMF Inc.*, 599 F.2d at 354 (internal citations omitted). Puma is entitled to this presumption here.

Puma had been exclusively selling and promoting each Fenty Shoe, when Defendant introduced its offending version to the market. Defendant timed its sale of the knockoff Bow Slide to coincide with Puma's own March 2017 release of the Fenty by Puma Bow Slide. Petrick Decl. ¶ 25. Defendant offers only two colors of its bow slide, which are almost exactly the same color in appearance and indeed, even the color names chosen by Puma and Defendant are nearly identical ("olive branch" versus "olive" and "silver pink" versus "dusty pink",

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

respectively). Busch Decl. ¶¶ 7, 16. The conclusion is inescapable that Defendant copied the trade dress of the Fenty by Puma Bow Slide in an effort to trade on Puma's promotion of the shoe and the general popularity and commercial success of the Fenty Shoes. Puma released an updated "Creeper" on April 6, 2017 and will release its latest "Fur Slide" in the near future. Petrick Decl. ¶¶ 10-11. Defendant has in the past also copied the trade dress of these shoes. Busch Decl. ¶ 7.

Moreover, the close proximity in time to when Puma released the Fenty by Puma Bow Slide and when Defendant released its own copycat is further evidence of intent to profit from Puma's efforts. Petrick Decl. ¶ 23; *see Warner Bros. Entertainment v. Global Asylum, Inc.*, Case No. CV 12-9547 PSG (CWx), 2012 WL 6951315, at *13 (C.D. Cal. Dec. 10, 2012) ("The release date of December 11 – three days before the release of "The Hobbit: An Unexpected Journey" – provides additional evidence that Asylum intended to profit by associating its film with Plaintiffs' work.").

g. Actual Confusion Is Not Necessary

"Of course, it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 799 F.2d 867, 875 (2d Cir. 1986). Moreover, where the party acting to protect its rights moves quickly, it is unsurprising that there would be "little chance for actual confusion as yet" but it would be "unfair to penalize" that party – here, Puma – for acting to protect its rights "before serious damage has occurred." *Id*. Courts have issued preliminary injunctive relief against a party seeking to sell knock-off shoes where consumers will "probably" be misled. *See Reebok Int'l Ltd. v. Sung Hwa Int'l Corp*., No. 87 CIV. 7015 (JFK), 1987 WL 27684, at *2 (S.D.N.Y. Dec. 10, 1987) ("It is clear that the sneakers at issue here are so similar in stitching on their side that the

ordinarily prudent consumer will probably be misled by the defendants' product.")

As discussed, the media and consumers alike have commented on the confusing similarities between Puma's Fenty Trade Dress and Defendant's shoe designs. In describing Defendant's "Bow Slide," one Twitter user noted "is forever 21 tryna put Rihanna and puma out of business." Busch Decl. ¶ 13. Another Twitter user remarked, "Wow. Forever21 already duping the Puma Fenty by Rihanna pink bow slides." *Id*. This evidence supports a finding that the shoes are so similar in design that such confusion is likely if Defendant is not enjoined.

### C. Puma Will Likely Prevail on the Merits of its Copyright Claim

There is a likelihood that Puma will succeed on the merits of its copyright claim because the design elements Forever 21 copied, when removed from the shoes, can be applied in other mediums without replicating the shoes themselves. The elements of copyright infringement include copying of original protected elements of the copyrighted work and ownership of a valid copyright. *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991).

The Fenty Shoes have original design elements that are eligible for copyright protection. The design elements of useful articles, like the Fenty Shoes, are eligible for copyright protection if they "(1) 'can be identified separately from,' and (2) [are] 'capable of existing independently of, the utilitarian aspects of the article.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, No. 15-866, 2017 WL 1066261, at *3 (U.S. Mar. 22, 2017). Recently, the Supreme Court reaffirmed copyright protection for useful articles that contain design elements like the Fenty Shoes. In *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, the Court found that the angular and chevron designs on cheerleading uniforms were protected by copyright because "imaginatively removing the surface decorations from the uniforms and applying them to another medium would not replicate the uniform itself." *Id*. at *9.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Here, all three of the Fenty shoes include design elements that can be imaginatively removed and applied to a different medium without replicating the shoe itself. First, the casually knotted fabric of the Fenty Bow Slide when removed could be applied to any medium without replicating the shoe itself. Second, the fur from the Fenty Fur Slide when removed could be applied to any other medium without replicating the shoe itself. Third, the ridged vertical tooling and grainy texture of the rubber outer sole on the Fenty Creeper could be removed and applied to another medium without replicating the shoe itself. Defendant copied all of these protected features in their knock-off shoes as shown in Puma's First Amended Complaint. *See* Dkt. 13 (FAC) ¶¶ 18, 22-27, 36-40.

The copyright in the Fenty Shoes is also properly owned by Puma. The designs in the Fenty Shoes were created by Ricardo Pina, Lead Designer for Puma. Petrick Decl. ¶ 27. Mr. Pina was a Puma employee and subject to an employment agreement. *Id*.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**D. Puma Will Likely Prevail on the Merits of its Patent Claim**

There is also a likelihood that Puma will succeed in proving design patent infringement because Defendant's accused sneakers are a direct imitation of the Puma Creeper shoe. The Puma Creeper is the subject of Puma's U.S. Patent No. D774,288 ("the '288 Patent"). Dkt. 13 (FAC) ¶¶ 18-19, 45-48.

Proving design patent infringement requires a showing that the two designs are substantially the same in "the eye of an ordinary observer, giving such attention as a purchaser usually gives." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670, 678 (Fed. Cir. 2008). Here, the accused design and the design claimed in the '288 patent are identical, as shown below. Both shoes are designed as lace-up sneakers with vertical ridged tooling around the rubber outer sole, a rubber ridge encircling the entire shoe immediately above the vertical ridged tooling, and a deep "C"-shaped bowl for the foot to slide into.

| Plaintiff's Design (FIG 4, '288 Patent) | Defendant's "Yoki Sneakers" |
| --- | --- |
| FIG. 4 |  |

An ordinary observer would likely think the design in the '288 Patent and Defendant's accused shoe shoe were the same shoe. An ordinary observe would certainly at least think Defendant's Yoki show is a colorable imitation of the design shown in the '288 patent and, accordingly, there is design patent infringement. *Id*. at 678.

**E. <u>The Balance of Hardships Favors Granting this Motion</u>**

"To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1397 fn 1 (9th Cir. 1997). "A court balancing the equities will look to the possible harm that might befall the various parties." *Kelly v. Primco Mgmt., Inc.*, No. CV1407263BROSHX, 2015 WL 10990368, at *16 (C.D. Cal. Jan. 12, 2015). Where a defendant may merely lose

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

profits by not being able to exploit the plaintiff's intellectual property, the balance of the hardships "weighs heavily in favor of granting a preliminary injunction." *Id.*

Here, that is exactly what is at stake. Although Defendant may lose sales on a few shoes (which sales appear to have only begun on or about March 22, 2017), Puma could lose brand goodwill with the public, other copycats may feel emboldened to trade on Puma's intellectual property, or Puma may find it difficult to partner with brand ambassadors, such as Rihanna. "If Defendant continues selling counterfeit shoes, Gucci will continue to suffer irreparable injury to its goodwill and reputation. Accordingly, the Court finds the balance of hardships weighs in favor of granting the TRO." *Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV1406680BROAJWX, 2014 WL 12561613, at *7 (C.D. Cal. Aug. 27, 2014).

**F. <u>Public Interest Favors an Injunction</u>**

The public is served by issuance of a preliminary injunction to protect copyright rights. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in a protected work." *Warner Bros. Entertainment, Inc. v. WTV Systems, Inc.*, 824 F. Supp. 2d 1003, 1015 (C.D. Cal. 2011), *citing with approval Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). Similarly, in the trade dress context, courts often define the public interest as the right of the public not to be deceived or confused. *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008). The public interest therefore favors a preliminary injunction in this case.

**IV. CONCLUSION**

For the foregoing reasons, Puma respectfully requests that the Court enter a preliminary injunction to bar Defendant from making any further sales of its knock-off shoes, until such a time as this matter can be tried.

DATED: April 11, 2017

VENABLE LLP

By: /s/ Tamany Vinson Bentz
Justin E. Pierce (appearing *pro hac vice*)
Tamany Vinson Bentz
Matthew J. Busch
Kimberly Culp Cloyd

Attorneys for Plaintiffs PUMA SE and Puma North America, Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900