SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SEONG KIM, Cal. Bar No. 166604
shkim@sheppardmullin.com
1901 Avenue of the Stars, 16th Floor
Los Angeles, California  90067
Telephone:  310.228.3700
Facsimile:   310.228.3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
LAURA L. CHAPMAN, Cal. Bar No. 167249
lchapman@sheppardmullin.com
LAI L. YIP, Cal. Bar No. 258029
lyip@sheppardmullin.com
TONI QIU Cal. Bar No. 302268
tqiu@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:   415.434.3947

THE WEBB LAW FIRM
KENT E. BALDAUF JR., *pro hac vice pending*
KBaldaufJr@webblaw.com
CECILIA R. DICKSON, *pro hac vice pending*
CDickson@webblaw.com
CHRISTIAN D. EHRET, *pro hac vice pending*
CEhret@webblaw.com
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200 | Pittsburgh, PA 15222
Telephone:  412.471.8815
Facsimile:   412.471.4094

Attorneys for Defendant
FOREVER 21, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PUMA SE, a German company; and PUMA NORTH AMERICA, INC., a Delaware corporation, <br><br>         Plaintiffs, <br><br>      v. <br><br> FOREVER 21, INC., a Delaware corporation,, <br><br>         Defendant. | Case No. 2:17-CV-02523-PSG-E <br><br> **DEFENDANT FOREVER 21, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> Date:  July 3, 2017 <br> Time: 1:30 p.m. <br> Judge: Philip S. Gutierrez <br> Courtroom: 350 West 1st Street <br>         Courtroom 6A |

1  ## **NOTICE OF MOTION AND MOTION TO DISMISS**

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3  PLEASE TAKE NOTICE that on July 3, 2017, at 1:30 p.m. or as soon

4  thereafter as counsel may be heard in the courtroom of the Honorable Philip S.

5  Gutierrez, located in the First Street Courthouse, 350 West 1st Street, Courtroom

6  6A, 6th Floor, Los Angeles, California 90012-4565, Defendant Forever 21, Inc.

7  ("Forever 21") will move and hereby does move to dismiss the First Amended

8  Complaint ("FAC") filed by Plaintiffs Puma SE and Puma North America, Inc.

9  (collectively, "Puma") (DE 13) pursuant to Federal Rule of Civil Procedure 12(b)(6)

10  for failure to state a claim.

11  Puma's first claim for relief for design patent infringement fails to state a

12  claim because it improperly dissects the totality of the design patent to gerrymander

13  an infringement read.  It does this by improperly ignoring virtually all of the

14  limitations of the design patent in favor of just a few.

15  Puma's second claim for relief for trade dress infringement fails to state a

16  claim because: (1) it fails to identify the claimed trade dress with specificity; (2) it

17  fails to plead secondary meaning; and (3) it fails due to aesthetic functionality.

18  Puma's third claim for relief fails to state a claim for copyright infringement

19  because the subject of the claim is an unprotectable, useful article, and Puma's

20  copyright applications have not been granted by the Copyright Office, are not

21  attached to Puma's filings, and have not been otherwise provided.

22  Puma's fourth claim for relief for unfair competition and false designation of

23  origin under the Lanham Act, and its fifth claim for relief for state unfair

24  competition, are duplicative of the second claim for relief and fail for the same

25  reasons.

26  Puma's attempt to stifle fair competition by claiming exclusive intellectual

27  property rights in universal shoe styles are without merit.  Basic categories of

28  footwear are not protectable (even with a celebrity spokeswoman such as Rhianna).

1   No matter how Puma attempts to state its claim—whether through copyrights, trade
2   dress, or a design patent—its threadbare recitals and vitriol fail to meet basic
3   pleading requirements.  Therefore, the FAC should be dismissed in its entirety under
4   Rule 12(b)(6), without leave to amend.

5       This Motion to Dismiss the First Amended Complaint ("Motion to Dismiss")
6   is based on this Notice, the accompanying Memorandum of Points and Authorities,
7   Forever 21's Request for Judicial Notice and Exhibits 1-8 attached thereto and filed
8   contemporaneously herewith, all pleadings, papers and other documentary materials
9   in the Court's file for this action, those matters of which this Court may or must take
10  judicial notice, and such other matters as this Court may consider in connection with
11  the hearing on this matter.

12      This Motion to Dismiss is made following the conference of counsel pursuant
13  to C.D. Cal. Local Rule 7-3, which took place on April 27, 2017.

14  Dated:  May 4, 2017            Respectfully submitted:

15                               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
16
17                               By    _____
                                            */s/ Laura L. Chapman*
                                        LAURA L. CHAPMAN
18
19                                    Attorneys for FOREVER 21, INC.
20
21  Dated:  May 4, 2017            Respectfully submitted:
21                               THE WEBB LAW FIRM
22
23
24                               By:   _____
                                            */s/ Kent E. Baldauf*
25                                      KENT E. BALDAUF, JR.
                                        CECILIA R. DICKSON
26                                      CHRISTIAN D. EHRET
27
                                      Attorneys for FOREVER 21, INC.
28                                    *Pro Hac Vice Pending*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................ 1

II.   LEGAL STANDARD .................................................................. 3

III.  ARGUMENT .............................................................................. 4

   A.   Count I Fails to State a Claim for Design Patent Infringement ................. 4

      1.   Puma Misstates the Scope of the Design Patent ........................... 4

      2.   Forever 21 Cannot Infringe the Design Patent Under Any Facts ............... 5

      3.   Puma Failed to Adequately Plead Willful Patent Infringement ................. 7

   B.   Count II Fails to State a Claim for Trade Dress Infringement...................... 7

      1.   Puma Fails to Specifically Identify the Alleged Trade Dress..................... 8

      2.   Puma Fails to Plead Non-Functionality .......................................... 9

      3.   Puma Fails to Plead Secondary Meaning.................................... 10

   C.   Count III Fails to State a Claim for Copyright Infringement ...................... 13

      1.   Puma's Failure to Attach the Applications for Copyright Registration Alone Warrants Dismissal................................................... 14

      2.   Puma's Three-Dimensional Shoe Designs Are Not Copyrightable........... 15

      3.   Puma's Creeper Copyright Infringement Claim Fails ................................ 17

      4.   Puma's Fur Slide Copyright Infringement Claim Fails ............................. 17

      5.   Puma's Bow Slide Copyright Infringement Claim Fails ........................... 18

   D.   Counts IV and V Are Duplicative and Likewise Fail................................ 19

IV.   CONCLUSION ........................................................................ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*

5
   280 F.3d 619 (6th Cir. 2002) ............................................................................ 10

6

*Amini Innovation Corp. v. Anthony Calif., Inc.*

7
   439 F.3d 1365 (Fed. Cir. 2006) ........................................................................... 4

8

*Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*

9
   501 F.3d 1314 (Fed. Cir. 2007) ........................................................................... 4

10

*Aurora World, Inc. v. Ty Inc.*
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) ............................................................ 14

11

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*

12
   No. 2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18, 2008) .......................... 9

13

*Baby Buddies, Inc. v. Toys R Us, Inc.*

14
   611 F.3d 1308 (11th Cir. 2010) ........................................................................ 19

15

*Branch v. Tunnell*

16
   14 F. 3d 449 (9th Cir. 1994) ............................................................................... 3

17

*In the Matter of Certain Footwear Prods.*

18
   Inv. No. 337-TA-936 (July 6, 2016) .................................................................. 12

19

*Coach Servs., Inc. v. Triumph Learning LLC*

20
   668 F.3d 1356 (Fed. Cir. 2012) ........................................................................ 12

21

*Colida v. Nokia, Inc.*
   347 Fed.Appx. 568 (Fed. Cir. 2009) ............................................................... 4, 6

22

*Coto Settlement v. Eisenberg*

23
   593 F. 3d 1031 (9th Cir. 2010) ........................................................................... 3

24

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*

25
   CV 15-769-PSG (C.D. Cal. May 8, 2015 at *2, Gutierrez, J.) ............. 3, 7, 9, 11

26

*Deckers Outdoor Corp. v. J.C. Penney Co.*

27
   45 F.Supp.3d 1181 (C.D. Cal. 2014) ............................................................ 7, 19

28

*Duraco Prods. v. Joy Plastic Enters.*
   40 F.3d 1431 (3d Cir. 1994) ........................................................... 10

*e.Digital Corp. v. iBaby Labs, Inc.*
   No. 15-CV-05790-JST, 2016 WL 4427209
   (N.D. Cal. Aug. 22, 2016) ............................................................... 4

*Egyptian Goddess, Inc. v. Swisa, Inc.*
   543 F.3d 665 (Fed. Cir. 2008) ......................................................... 6

*Eliya, Inc. v. Kohl's Dep't Stores*
   No. 06 CIV.195, 2006 WL 2645196
   (S.D.N.Y. Sept. 13, 2006) ..................................... 14, 15, 16, 17, 18, 19

*Fair Wind Sailing, Inc. v. Dempster*
   764 F.3d 303 (3d Cir. 2014) ............................................................ 8

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*
   826 F.2d 837 (9th Cir. 1987) ........................................................... 8

*Fusion Windows & Doors, Inc. v. Am. Reliable Windows, Inc.*
   No. CV 13-1022 PSG (JCX), 2013 WL 12126108
   (C.D. Cal. July 12, 2013)..................................................... 13, 15, 16

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*
   739 F.3d 446 (9th Cir. 2014) ......................................................... 16

*Int'l Jensen, Inc, v. Metrosound U.S.A. Inc.*
   4 F.3d 819,823 (9th Cir. 1993) ........................................................ 7

*Inwood Labs., Inc. v. Ives Labs., Inc.*
   456 U.S. 844 (1982) ...................................................................... 9

*Khatib v. Red St. Ventures*
   No. 11 C 3686, 2011 WL 3557307 (N.D. Ill. June 30, 2011).............................. 18

*Legler v. Exxel Outdoors, Inc.*
   No. 13-C-668, 2014 WL 3727566 (E.D. Wis. July 29, 2014) .............................. 4

*Lickerish, Inc. v. Alpha Media Grp.*
   No. CV1300377, 2014 WL 12589641 (C.D. Cal. Jan. 2, 2014) ......................... 13

Case No. 2:17-CV-02523-PSG-E
SMRH:482789180.1    DEFENDANT FOREVER 21, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*Olem Shoe Corp. v. Washington Shoe Co.*
   No. 09-23494-CIV, 2011 WL 6202282 (S.D. Fla. Dec. 1, 2011),
   *aff'd sub nom. Olem Shoe Corp. v. Washington Shoe Corp.*,
   591 F. App'x 873 (11th Cir. 2015) ................................................................. 18

*Pagliero v. Wallace China Co.*
   198 F.2d 339 (9th Cir. 1952) ........................................................................ 9

*RDF Media Ltd. v. Fox Broad. Co.*
   372 F. Supp. 2d 556 (C.D. Cal. 2005) ............................................................ 8

*Reed Elsevier, Inc. v. Muchnick*
   559 U.S. 154 (2010) ..................................................................................... 14

*SCG Characters LLC v. Telebrands Corp.*
   No. CV1500374DDPAGRX, 2015 WL 4624200
   (C.D. Cal. Aug. 3, 2015) ......................................................................... 4, 6

*SCOA Indus., Inc. v. Famolare, Inc.*
   No. 75 CIV. 3357 IBW, 1976 WL 21086
   (S.D.N.Y. Feb. 13, 1976) ....................................................................... 15, 17

*Traffix Devices, Inc. v. Marketing Displays, Inc.*
   532 U.S. 23 (2000) ...................................................................................... 10

*Treat, Inc. v. Dessert Beauty*
   No. 05-923 PK, 2006 WL 2812770 (D. Or. May 5, 2006) ................................ 8

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*
   916 F.2d 76 (2d Cir. 1990) ........................................................................... 9

*Zella v. E.W. Scripps Co.*
   529 F.Supp.2d 1124 (C.D. Cal. 2007) .......................................................... 13

Statutes

15 U.S.C. § 1052(e)(5) ................................................................................. 9

Copyright Act ............................................................................................. 17

Lanham Act.................................................................................................. 2

Other Authorities

Fed. R. Civ. P. 12(b)(6) ...................................................................2, 3, 4, 5, 6, 13, 18

3 Patry on Copyright § 9:86.50............................................................................. 14

## I.     INTRODUCTION

Penny loafers.  Wing tips.  Oxfords.  Boat shoes.  Flip flops.  These are a few examples of footwear styles that have been sold under many different brands for many decades.  No one company or brand has the right to exclude others from making or selling these types of iconic styles.  Yet that is precisely what Puma improperly seeks to do in this case.

Puma seeks a monopoly on two classic styles of footwear: the "creeper" and a sandal slide.  The creeper, characterized by a rubber sole,[1] was developed after World War II and has been sold under different brands.  Puma's version, the "Fenty Creeper," is simply a Puma Suede upper (introduced in 1968) on a creeper sole[2]:



The second style over which Puma improperly seeks exclusive rights is a women's backless slide sandal, consisting of a single strap attached to a foot bed.  This design is quite possibly the simplest footwear ever created.  One of the Puma slide designs has faux fur on the strap; the other design's strap has a bow:

**Puma Fenty Fur Slide**                    **Puma Fenty Bow Slide**

        

---

[1] "[C]reepers are a style of shoe which has thick crepe soles, often in combination with suede uppers.  This style of footwear became fashionable in the years following World War II, seeing resurgences of popularity at various times ever since." https://en.wikipedia.org/wiki/Brothel_creeper.

[2] http://us.puma.com/en_US/pd/mens-puma-by-rihanna-creeper-white-leather/pna364640.html?dwvar_pna364640

Creepers - and slides with faux fur and bows - are manufactured by a host of companies and sold under different trademarks by diverse retailers at varying price points targeting distinct bands of the consumer spectrum, as shown in the exhibits to Forever 21's Request for Judicial Notice ("RJN") filed contemporaneously with this motion.  Puma's versions are simply one of many, as are Forever 21's.  No intellectual property law can remove these product designs from the market and assign them exclusively to a single producer, such as Puma, for its exclusive use.

Forever 21 moves to dismiss all five counts of the Puma's First Amended Complaint ("FAC") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Puma's first claim for relief for design patent infringement fails to state a claim because it improperly dissects the totality of the design patent to gerrymander an infringement read.  It does this by improperly ignoring virtually all of the limitations of the design patent in favor of just a few.

Puma's second claim for relief for trade dress infringement fails to state a claim because: (1) it fails to identify the claimed trade dress with specificity; (2) it fails to plead secondary meaning; and (3) it fails due to aesthetic functionality.

Puma's third claim for relief fails to state a claim for copyright infringement because the subject of the claim is an unprotectable, useful article, and Puma's copyright applications have not been granted by the Copyright Office, are not attached to Puma's filings, and have not been otherwise provided.

Puma's fourth claim for relief for unfair competition and false designation of origin under the Lanham Act, and its fifth claim for relief for state unfair competition, are duplicative of the second claim for relief and fail for the same reasons.

Puma's attempt to stifle fair competition by claiming exclusive intellectual property rights in universal shoe styles are without merit.  Basic categories of footwear are not protectable (even with a celebrity spokeswoman such as Rhianna).  No matter how Puma attempts to state its claim—whether through copyrights, trade

1    dress, or a design patent—its threadbare recitals and vitriol fail to meet basic

2    pleading requirements.  The FAC should be dismissed in its entirety under Rule

3    12(b)(6), without leave to amend.

4    **II.    LEGAL STANDARD**

5         "A motion to dismiss under Rule 12(b)(6) tests whether the complaint

6    'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

7    plausible on its face.'"  *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, CV 15-

8    769-PSG (SSx) (C.D. Cal. May 8, 2015 at *2, Gutierrez, J.) (*citing Ashcroft v. Iqbal*,

9    556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

10   570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

11   content that allows the court to draw the reasonable inference that the defendant is

12   liable for the misconduct alleged ….  The plausibility standard is not akin to a

13   'probably requirement,' but it asks for more than a sheer possibility that a defendant

14   has acted unlawfully."  *Id.* (citations omitted).  In short, as a matter of law,

15   threadbare, conclusory statements are not sufficient to state a cause of action.

16        In considering a motion to dismiss, courts may consider materials that are part

17   of or incorporated by reference in the pleadings or subject to judicial notice.  *Coto*

18   *Settlement v. Eisenberg*, 593 F. 3d 1031, 1038 (9th Cir. 2010).  Judicial notice may

19   be taken "where the complaint necessarily relies upon a document or the contents of

20   the document are alleged in a complaint" and do not raise a reasonable dispute of

21   authentication.  *Id.*  This includes materials central or integral to the claims.  *Branch*

22   *v. Tunnell,* 14 F. 3d 449, 454 (9th Cir. 1994).[3]

23

24

25

26

27   _____
[3] Pursuant to the contemporaneous Request for Judicial Notice, Forever 21
28   respectfully moves for consideration of the attached materials, all of which are
     publicly available, indisputable, incorporated in pleadings or relevant to the claims.

1  III.  **ARGUMENT**

2   A.  **Count I Fails to State a Claim for Design Patent Infringement**

3   A claim of design patent infringement may be dismissed pursuant to Rule

4  12(b)(6) where, as a matter of law, no reasonable fact-finder could find

5  infringement.  *See, e.g., Colida v. Nokia, Inc.,* 347 Fed.Appx. 568, 569–70 (Fed. Cir.

6  2009) (affirming Rule 12(b)(6) dismissal of "facially implausible" claims for design

7  patent infringement); *SCG Characters LLC v. Telebrands Corp.*, No.

8  CV1500374DDPAGRX, 2015 WL 4624200, at *6 (C.D. Cal. Aug. 3, 2015)

9  (dismissing design patent claims under Rule 12(b)(6) where "it is clear that an

10  ordinary observer would not consider the designs substantially the same").

11   1.  *Puma Misstates the Scope of the Design Patent*

12   Puma asserts that Forever 21's Creeper (sold under the YOKI trademark)

13  infringes the Design Patent.  However, the FAC deceivingly compares only a single

14  view (Fig. 4) of the Design Patent with a single side-view of the accused Creeper.

15  But to infringe, an accused design "must encompass the claimed ornamental features

16  of *all figures* of a design patent." *Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*,

17  501 F.3d 1314, 1320 (Fed. Cir. 2007) (emphasis in original); *see also Amini*

18  *Innovation Corp. v. Anthony Calif., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("the

19  deception that arises is a result of similarities in the overall design, not of

20  similarities in ornamental features considered in isolation").  Puma's failure to

21  allege that the YOKI Creeper includes the limitations of ***all eight figures*** alone

22  warrants dismissal of the claim, and fails as a matter of law.[4]  *See Legler v. Exxel*

23  *Outdoors, Inc.*, No. 13-C-668, 2014 WL 3727566, at *2 (E.D. Wis. July 29, 2014)

24

25

---

26  [4] Since the removal of Form 18 from the FRCP, the heightened pleading standard
for patent infringement does not allow for a complaint to only address a small subset
27  of claim limitations.  *See e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-
JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (dismissing infringement
28  claim where the complaint failed to map a claim limitation to the accused product).

(dismissing a design patent claim under Rule 12(b)(6) due to the "dubious" nature of the claim in which the features "are all depicted using solid lines").

        2.    *Forever 21 Cannot Infringe the Design Patent Under Any Facts*

Any further amendments to the FAC would be futile because, in addition to the pleading deficiencies, this Court can conclude that Puma's infringement claim is facially implausible based on a cursory comparison of the Design Patent to the accused YOKI Creeper. Here, even assuming *arguendo* that the Design Patent is valid (which is unlikely), no reasonable fact-finder would find that Forever 21's YOKI Creeper infringes the claim of Puma's exceedingly narrow claim.

Examining the limitations of the Design Patent intentionally omitted from the FAC reveals the implausibility of this claim. Fig. 3, for example, shows a trapezoidal limitation in solid lines that is absent from the accused YOKI Creeper:

  

'288 Patent, Fig. 3      '288 Patent, Fig. 3 (annotated)      Accused product

Even ignoring the *seven figures* improperly omitted from the FAC that include numerous limitations not addressed by Puma, there are clear and unmistakable differences between the YOKI Creeper and the small subset of limitations in Fig. 4 that Puma chose to address. For example, the relative height of the sole with respect to the upper, the use of ornamental/visible stitching, and the number and placement of the ventilation holes are all significantly and obviously different:



FIG. 4

An ordinary observer would readily notice all of these differences as collectively giving each shoe a different overall appearance.  Because the two designs are, as a whole, "plainly dissimilar," Puma's claim fails.  *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008); *Colida*, 347 Fed. Appx. at 569-70.

The accused YOKI Creeper could not possibly infringe the Design Patent because the only alleged similarities[5] are found in the prior art and, thus, an ordinary observer would focus on the features that differ between the Design Patent and the prior art (which, in this case, do not appear in the YOKI Creeper).  *See SCG Characters LLC*, 2015 WL 4624200, at *6 (C.D. Cal. Aug. 3, 2015) (dismissing design patent claims under Rule 12(b)(6) where the accused products "appear to the Court to be more similar to the prior art than to [the] asserted designs"); *see also Egyptian Goddess*, 543 F.3d at 681 (requiring that infringement be determined in the context of the prior art).  The shoe designs cited on the face of the Design Patent show: (1) lace-up sneakers having (2) vertical ridged tooling around the rubber outer sole, (3) a rubber ridge encircling the entire shoe immediately above the vertical ridged tooling, and (4) a deep 'C'-shaped bowl for the foot to slide into, including Puma's own prior sneaker design:

---

[5] Tellingly, in its Motion for a Preliminary Injunction, Puma calls out only four features as demonstrating how the YOKI Creeper is allegedly "identical" to the Design Patent, all of which appear in the prior art cited in the Design Patent: "[1] lace-up sneakers with [2] vertical ridged tooling around the rubber outer sole, a [3] rubber ridge encircling the entire shoe immediately above the vertical ridged tooling, and [4] a deep 'C'-shaped bowl for the foot to slide into."   DE 21, at 29.

Case No. 2:17-CV-02523-PSG-E

 

6    7    8

An ordinary observer familiar with these prior art shoes would focus more on the features that differ from the prior art, such as the number and placement of ventilation holes, the trapezoidal shape on the back, and the lack of ornamental/visible stitching. The absence of such features in the YOKI Creeper makes Puma's claim facially implausible.

        3.    *Puma Failed to Adequately Plead Willful Patent Infringement*

      The FAC's threadbare recital that "Defendant has actual and/or constructive knowledge of the '288 Patent" is insufficient to raise a plausible inference of willful patent infringement. *See* DE 13, ¶ 48. "California federal courts have taken the view that a plaintiff must plead presuit knowledge in order to adequately plead willful infringement." *Deckers Outdoor Corp. v. J.C. Penney Co*., 45 F.Supp.3d 1181, 1187 (C.D. Cal. 2014); *see also Deckers*, 2015 WL 12731929, at *7 ("[R]ecitation of the standard does not save the complaint's factual deficiencies.").

**B.**    **Count II Fails to State a Claim for Trade Dress Infringement**

      To plead trade dress infringement, a plaintiff must identify the trade dress and then plead that it is (1) nonfunctional; (2) has secondary meaning; and is (3) likely to be confused with defendant's product by the consuming public. *Deckers*, 2015 WL 12731929, at *3; *Int'l Jensen, Inc, v. Metrosound U.S.A. Inc.*, 4 F.3d 819,823

---

6 "Mr. Completely Nike and Adidas Creepers," dated Oct. 28, 2014, http://thesnobette.com/2014/10/mr-completely-nike-adidas-creepers/

7 "Mr. Completely Shoes-Haus of Rihanna," dated Oct. 27, 2014, http://hausofrihanna.com/rihanna-puma-creative-director/mr-completely-puma-creepers-puma/

8 "Mr. Completely Shoes-Haus of Rihanna," dated Oct. 27, 2014, http://hausofrihanna.com/mr-completely-adidas-creepy-samba-shoes/

1   (9th Cir. 1993); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 562 (C.D.

2   Cal. 2005).

3           1.     *Puma Fails to Specifically Identify the Alleged Trade Dress*

4          A plaintiff claiming trade dress infringement must show that its trade dress is

5   protectable by identifying the elements of the claimed trade dress. *Fuddruckers,*

6   *Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). "[I]t is the

7   plaintiff's duty to 'articulat[e] the specific elements which comprise its distinct

8   dress.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014)

9   (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir.

10  1997)).  Only after specifically defining the trade dress "can the court and the parties

11  coherently define exactly what the trade dress consists of and determine whether the

12  trade dress is valid and if what the accused is doing is an infringement." *Treat, Inc.*

13  *v. Dessert Beauty*, No. 05-923 PK, 2006 WL 2812770, at *14 (D. Or. May 5, 2006).

14         Puma accuses the Creeper, the Fur Slide, and the Bow Slide as follows:

15

| Puma's Shoes | Puma's Alleged Trade Dress |
|---|---|
| Puma Creeper-style shoe | "**includes, at least**, a lace-up sneaker with suede uppers, a thick rubber outer sole consisting of ridged vertical tooling and grainy texture with a rubber ridge encircling the entire shoe immediately above the vertical ridged tooling, and a deep "C"-shaped bowl for the foot to slide into."  DE 13 at ¶ 23 (emphasis added). |
| Puma Fur Slide | "**includes, at least**, a thick sandal base with a wide plush fur strap extending to the base of the sandal, and a satin foam backing, and shares the deep bowl for the foot (albeit in a sandal)." DE 13 at ¶ 24 (emphasis added). |
| Puma Bow Slide | "**includes, at least**, a thick sandal base decorated by a wide, casually knotted satin bow with pointed endings atop the side strap in addition to satin foam backing, and the same deep bowl for the foot" DE 13 at ¶ 26 (emphasis added). |

26  Color is not explicitly claimed as trade dress.  Use of the unrestricted language

27  employed by Puma, such as "includes, at least" and "consists of, at least," fails to

28  adequately and clearly identify the "total appearance" of the product that Puma

1 claims is the trade dress at issue.  *Autodesk, Inc. v. Dassault Systemes Solidworks*

2 *Corp.*, No. 2008 U.S. Dist. LEXIS 109800, at *14 (N.D. Cal. Dec. 18, 2008)

3 (granting a motion to dismiss for failure to adequately identify the trade dress at

4 issue).  Puma appears to use such language so it can, on occasion, reference color as

5 an accused part of the trade dress while not meeting the burdens to substantiate color

6 serving as a source indicator.  Puma's claimed trade dress is inadequate as a matter

7 of law.  Therefore, the First Claim for Relief should be dismissed.

8 2.   *Puma Fails to Plead Non-Functionality*

9      Functional features are not entitled to trademark protection.  15 U.S.C. §

10 1052(e)(5).  Although the Trademark Act does not define the term "functional," the

11 Supreme Court has explained that a product's feature is functional "if it is essential

12 to the use or purpose of the article or if it affects the cost or quality of the article."

13 *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982).  Courts

14 hesitate to grant broad trade dress rights in mere ornamentation based on the

15 "aesthetic functionality" doctrine because, as with mechanically functional features,

16 doing so would stifle legitimate competition.  *See, e.g.*, *Pagliero v. Wallace China*

17 *Co.*, 198 F.2d 339 (9th Cir. 1952) (designs on china not protected because

18 aesthetically functional; consumers bought the plaintiff's china because they thought

19 it was beautiful, but it did not see source-identifying significance in the design);

20 *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76 (2d Cir.

21 1990) (silversmith denied broad trade dress rights in a baroque design on its

22 silverware on aesthetic functionality grounds because silversmiths commonly wish

23 to embellish their silverware with baroque patterns and compete in the marketplace).

24      At the motion to dismiss stage, this Court has specifically held, in a similar

25 case involving UGG® footwear, that "conclusory statements of non-functionality

26 fail[] to sufficiently allege the element, particularly because some features of the

27 claimed trade dress do perform utilitarian functions in certain contexts (*i.e.*, buttons

28 or adjustable overlapping flaps)."  *Deckers*, 2015 WL 12731929, at *4.  It is Puma's

9

1   undoubted burden to prove non-functionality as an affirmative matter, and failure to

2   plead this required element warrants dismissal.  *See Traffix Devices, Inc. v.*

3   *Marketing Displays, Inc.*, 532 U.S. 23, 30 (2000).

4        In Puma's FAC, no discussion – not even a conclusory statement – is

5   provided to aver that Puma's alleged trade dress is non-functional.  Indeed, the

6   Complaint seems to take the opposite approach by choosing to characterize the

7   various elements of alleged trade dress with functional language and identification

8   of functional shoe components (*i.e.*, "a deep "C"-shaped bowl *for the foot to slide*

9   *into*", "thick sandal base", "strap", and "deep bowl *for the foot*") (emphasis added).

10  Taken on its face, the FAC appears to be claiming functionality for its purported

11  trade dress.  Without addressing non-functionality in the FAC, the Second Claim for

12  Relief must be dismissed.

13               3.   *Puma Fails to Plead Secondary Meaning*

14       Dismissal is also proper because Puma has failed to plead the existence of

15  secondary meaning in sufficient detail.  Secondary meaning exists when "the

16  primary significance" of the claimed trade dress is to "identify the source of the

17  product rather than the product itself."  *Wal-Mart Stores, Inc.*, 529 U.S. at 211-213,

18  216 (1999).  Product designs are notoriously difficult to serve as trade dress because

19  of the difficulty in establishing secondary meaning.  *Duraco Prods. v. Joy Plastic*

20  *Enters.*, 40 F.3d 1431, 1454 (3d Cir. 1994) ("In sum, secondary meaning in a

21  product configuration case will generally not be easy to establish.").

22       Trade dress is classically sorted into two categories- product packaging and

23  product configuration.  In cases of product configuration, like this case,

24  configuration can never be inherently distinctive. "No designer should have a

25  monopoly on designs regarded by the public as the basic form of a particular item."

26  *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619,

27  637 (6th Cir. 2002).  "While most trademarks only create a monopoly in a word, a

28  phrase or a symbol, granting trade dress protection to an ordinary product design

1   would create a monopoly in the goods themselves." *Yurman*, 262 F.3d at 115.

2   Thus for product configuration matters, secondary meaning must be pled.

3         The same types of conclusory allegations put forth by Puma in this case have

4   previously been rejected by this Court in the *Deckers* case:

5           Plaintiff states generally:  the Bailey Button Boot Trade

6           Dress is one of its "most well recognized and

7           commercially successful styles;" Plaintiff has spent

8           "substantial time, effort, and money promoting and

9           advertising items embodying the trade dress; the trade

10          dress has been in "long use" by Plaintiff; and Plaintiff has

11          made "extensive sales" and sold "a substantial amount" of

12          boots bearing the design.  … While the complaint alleges

13          that the Bailey Button Boot Trade Dress has "achieved

14          widespread acceptance and recognition among the

15          consuming public and trade throughout the United States,"

16          it fails to complete this assertion and state what the

17          consuming public accepts and recognizes about the trade

18          dress.

19  *Deckers*, 2015 WL 12731929 at *5; *Compare* to DE 13 at ¶¶ 20 ("…Puma has

20  invested a substantial amount of time, money and other resources in establishing"

21  the trade dress); 21("As a result of Puma's substantial use and promotion … the

22  Fenty Trade Dress has acquired great value…"); and 22 ("Puma's substantial

23  investment and success with the Fenty Shoes…").  These conclusory statements are

24  the only statements by Puma regarding secondary meaning—the FAC fails to

25  mention the prominent display of the PUMA® wordmark and design marks on its

26  shoes, which tend to suggest that it is the actual trademark that provides source

27  indication, and not any of the functional items that Puma is now claiming as trade

28

1  dress in an effort to monopolize the creeper market and claim exclusivity in relation
2  to fur and bow slides.

3       Independent, third party use of the asserted trade dress makes it impossible
4  for Puma to establish secondary meaning.  *See Coach Servs., Inc. v. Triumph*
5  *Learning LLC*, 668 F.3d 1356, 1380 (Fed. Cir. 2012) (holding that "the Board's
6  failure to consider all pre-decision third-party use of the term 'coach' for
7  educational materials undermines its secondary meaning analysis"); *In the Matter of*
8  *Certain Footwear Prods.*, Inv. No. 337-TA-936 (July 6, 2016), *available at*
9  http://www.itcblog.com/images/commopin936.pdf (third party use of designs
10  defeated trade dress claims).

11       Here, use of the asserted trade dress by third-parties defeats secondary
12  meaning.  Puma opened this door by contending in its FAC that its products are
13  "currently being sold in both brick-and-mortar stores and online retailers such as
14  Neiman Marcus, Nordstrom's, Urban Outfitters, and Bloomingdales, among others."
15  DE 13 at ¶ 11.  Yet, a search for the terms "creeper," "fur slide," and "bow slide" on
16  these retailers' websites reveals numerous third-party uses.[9]  For example, a search
17  on NeimanMarcus.com for "fur slides" reveals numerous slides including a thick
18  sandal base with a wide plush fur strap extending to the base of the sandal, none of
19  which are associated with Puma.  *See* RJN, Exh. 1 (showing third-party fur slides by
20  Givenchy, Seychelles, Jeffrey Campbell, JSlides, and others).  Numerous other
21  third-party "fur slides" are shown on Urban Outfitter's and Bloomingdales'
22  websites.  *See* RJN, Exhs. 2, 3.  Likewise, a search for "bow slide" on
23  Nordstrom.com reveals an entire page of slides including a bow, only one of which
24  is Puma's.  *See* RJN, Exh. 4 (showing products by other designers).

[9] As explained in the concurrently-submitted Request for Judicial Notice, these retailers' webpages are central and integral to Puma's FAC.

1     A Google search for "bow slides" and "fur slides" show a staggering amount

2  of third-party use of the asserted trade dress.[10]  *See* RJN, Exh. 5 (showing third-party

3  use of the asserted "bow slide" trade dress by Cape Robbins, Steve Madden, Jeffrey

4  Campbell, Sam Edelman, GoJane, Moria-19, and many others); RJN, Exh. 6

5  (showing third-party use of the asserted "fur slide" trade dress by Urban Outfitters,

6  Nike, Jeffrey Campbell, Walmart, Qupid, Steve Madden, and many others).

7     The asserted "creeper" trade dress is also widely and independently used by

8  third-parties.  Urban Outfitters' website shows third-party use by T.U.K., Superga,

9  and Hollie, side-by-side Puma's Fenty creeper.  *See* RJN, Exh. 7.  A Google search

10  for "creeper sneaker" shows even further independent third-party uses.  *See* RJN,

11  Exh. 8.  In view of the countless instances of third-party use of the asserted trade

12  dress, Puma's claim of secondary meaning is implausible.

13     **C.     Count III Fails to State a Claim for Copyright Infringement**

14     Puma does not aver facts sufficient to support a plausible claim of copyright

15  infringement in relation to the Creeper, Bow Slide or Fur Slide.[11]  Claims of

16  copyright infringement can be dismissed pursuant to Rule 12(b)(6) where it can be

17  facially determined that the accused work is not substantially similar to protectable

18  aspects of the alleged copyrighted work.  *Fusion Windows & Doors, Inc. v. Am.*

19  *Reliable Windows, Inc.*, No. CV 13-1022 PSG (JCX), 2013 WL 12126108, at *3

20  (C.D. Cal. July 12, 2013) (citing *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203

21  (9th Cir. 1945) ("[W]hen the copyrighted work and the alleged infringement are

22  both before the court, capable of examination and comparison, non-infringement can

23  be determined on motion to dismiss.")); *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d

24

25  ───────────────────

26  [10] Puma's Motion for a Preliminary Injunction refers to Google results for "pink
bow slides" and "puma fur slide."  Accordingly, Puma cannot object to the
authenticity of Google results for these more relevant search terms.

27  [11] The FAC also seeks statutory damages and attorneys' fees, but fails to support a
plausible inference that such remedies are available.  *See Lickerish, Inc. v. Alpha*
28  *Media Grp.*, No. CV1300377, 2014 WL 12589641, at *5 (C.D. Cal. Jan. 2, 2014).

1124, 1130 (C.D. Cal. 2007) ("For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint"); *see also* 3 PATRY ON COPYRIGHT § 9:86.50.

      1.   *Puma's Failure to Attach the Applications for Copyright Registration Alone Warrants Dismissal*

Puma has yet to obtain copyright registrations for its asserted shoe designs—a significant hurdle considering the unprotectable nature of what Puma is attempting to claim. The FAC alleges three copyright applications exist, but neither the applications nor the corresponding deposits are attached. *See* DE 13, ¶ 41. Although the Court of Appeals for the Ninth Circuit permits complaints for copyright infringement to be filed after filing an application, but prior to registration, neither Forever 21 nor this Court is capable of guessing what Puma attempted to claim or whether Puma elected to expedite the registration process as would be expected given Puma's continued efforts to fast track this litigation.

Puma's failures warrant dismissal of these claims. *See, e.g.*, *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1130 (C.D. Cal. 2009) (dismissing a copyright claim where the plaintiff averred that an application was filed but the "exhibits do not demonstrate that the registration application, fee, and deposit were completed and mailed to the Copyright Office, much less that they were received"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). "No court has held that a plaintiff can satisfy § 411(a) simply by placing the registration application, fee and deposit in the mail prior to filing suit, and the statute requires receipt of all three items, not simply the application itself, by the Copyright Office before suit is initiated." *Aurora World, Inc.*, 719 F. Supp. 2d at 1130 (quoting *Breakdown Servs., Ltd. v. My Entm't World, Inc.*, No. CV 08-5702, 2009 WL 3045807, at *2 (C.D. Cal. Sept. 18, 2009)); *see also Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 CIV.195, 2006 WL 2645196, at *8 (S.D.N.Y. Sept. 13, 2006) ("Eliya has no copyright in an actual shoe, only a two-dimensional representation of one").

2.    *Puma's Three-Dimensional Shoe Designs Are Not Copyrightable*

Puma cannot survive dismissal by amending the FAC to recite additional averments concerning efforts to obtain registrations or to attach copies of the applications.  Such an attempt would be futile because this Court can easily determine that Puma's copyright claims are facially implausible given the accused products are not substantially similar to any protectable aspects of the alleged copyrighted works.  *See Fusion Windows & Doors, Inc.*, 2013 WL 12126108, at *3.

Courts faced with this very issue have held that design elements of a shoe, other than two-dimensional images printed on the material of the footwear, are not subject to copyright protection.  *See SCOA Indus., Inc. v. Famolare, Inc*., No. 75 CIV. 3357 IBW, 1976 WL 21086, at *2 (S.D.N.Y. Feb. 13, 1976) (in the context of a copyright claim for a shoe design, holding that "**[t]here can be no valid copyright in troughs in the sole or wavy lines on the sides**" because "[t]hese have no existence as works of art and if they did have lack even the minimum originality needed for copyright.") (emphasis added).  Three-dimensional "design features of [a shoe] do not represent independent artistic expression, as would an image displayed on the shoe's surface." *Eliya, Inc.*, 2006 WL 2645196, at *12 (holding that a shoe design is not copyrightable because "the features reflect the designer's decisions regarding how best to implement a shoe's functional purposes-how to, in an aesthetically pleasing manner, keep the shoe attached to the wearer's feet, hold the material of the shoe together, cushion the wearer's feet, and provide traction on various surfaces.").  Even where some design choices "reflect more concern for form than for function[,]…the blending of form and function in the [] design results in the exclusion of its design elements from copyright protection." *Id.*

The Copyright Office specifically lists "shoes" as useful articles that are *not protectable* without separable copyrightable expression.  *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 934.1 (3d ed. 2014).  The Copyright Office further provides that, "[i]f the feature is an integral part of the

15

overall shape or contour of the useful article, that feature cannot be considered conceptually separable because removing it would destroy the basic shape of the useful article." *Id.* at § 924.2(B); *see also* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 505.04 (2d ed. 1984) ("However, since the overall shape of a useful article is not copyrightable, the test of physical separability is not met by the mere fact that the housing of a useful article is detachable from the working parts of the article"); *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 739 F.3d 446, 449 (9th Cir. 2014) (giving deference to Copyright Office guidance).

Puma erroneously relies on the recent Supreme Court decision in *Star Athletica, LLC v. Varsity Brands, Inc.* to imply that the law has changed in its favor. It has not.  The registrations at-issue in *Star Athletica* were **two-dimensional** designs including "various lines, chevrons, and colorful shapes" for cheerleader uniforms that could be envisioned as a two-dimensional work of art on a medium other than the uniforms.  *Star Athletica, L.L.C.*, 2017 WL 1066261, at *1.  In this case, by contrast, Puma asserts alleged copyrights in the *idea* of a shoe design or, at best, three-dimensional elements, that are not separable from the useful article or independently copyrightable.  *See, e.g., Eliya, Inc.*, 2006 WL 2645196, at *12.

"Ultimately, only protectable aspects of a work may be considered when determining whether infringement has occurred."  *Fusion Windows & Doors, Inc.*, 2013 WL 12126108, at *4 (citing *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991)).  Therefore, this Court can dismiss Puma's copyright claims even if the products as a whole "look quite similar" so long as there is no substantial similarity between the accused products and the "protectable elements" of the design.  *Id.*  And even if any of the asserted elements *could* be separated from the work, Puma's claims should nevertheless be dismissed because those elements, when removed from the useful articles, lack originality and/or were borrowed from third-party works.  *See, e.g., id.* at *3 (holding that "because the scope of copyright

1    protection does not extend to templates owned by others, Plaintiff has not
2    sufficiently alleged a claim for copyright infringement").

3              3.    *Puma's Creeper Copyright Infringement Claim Fails*

4              With respect to Puma's Creeper, the FAC focuses on the soles and alleges
5    only two copyrightable elements, both ubiquitous and functional features of
6    "creeper" soles: "[1] **the ridged vertical tooling and** [2] **grainy texture**
7    **encompassing the thick rubber outer sole**."  DE 13, ¶ 37.  The FAC fails to identify
8    or explain how a sole of a shoe is separable from the shoe itself or how these
9    elements "can be perceived as a two- or three-dimensional work of art separate from
10   the useful article."  *Star Athletica*, 2017 WL 1066261, at *13.  Instead, Puma jumps
11   to the unsupported conclusion that the "ridged vertical tooling and grainy texture"
12   could exist on its own or in some other tangible medium.  DE 13 at ¶ 33.  The
13   "ridged vertical tooling" is part of the overall shape of the shoe which is *not*
14   protectable under the Copyright Act.  *See SCOA Indus., Inc.*, 1976 WL 21086, at *2
15   (finding that "troughs in the sole [of a shoe] or wavy lines on the sides [of a shoe]"
16   are not protectable under copyright law); *Eliya, Inc.*, 2006 WL 2645196, at *12.  It
17   is likewise inconceivable how a grainy *texture* could be separable from a sole.

18             Even assuming, *arguendo*, that "the ridged vertical tooling and grainy
19   texture" could somehow be separated, such elements fail to meet the minimum
20   threshold of originality.  *See SCOA Indus., Inc.*, 1976 WL 21086, at *2 (holding that
21   "troughs in the sole or wavy lines on the sides [of a shoe]… have no existence as
22   works of art and if they did have lack even the minimum originality needed for
23   copyright.").  These features are not original works of art by Puma.

24             4.    *Puma's Fur Slide Copyright Infringement Claim Fails*

25             With respect to the "Fur Slide," the *only* element that Puma accuses of
26   infringement is "**a wide plush fur strap extending to the base of the sandal**."[12]

27   _____

28   [12] Puma's claim includes "the base of the sandal," which cannot be considered.

SMRH:482789180.1          DEFENDANT FOREVER 21, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Case No. 2:17-CV-02523-PSG-E

DE 12, ¶ 38.   Puma's claim that it owns exclusive rights to "a wide plush fur strap" defies basic principles of copyright law and fails to support a plausible claim of infringement.  The "wide plush fur strap" is not separable from the "sandal" because removing the strap changes the entire shape and contour of the sandal and because the purpose of a strap is to keep a person's foot in the sandal.  *Eliya, Inc*., 2006 WL 2645196, at *12 (holding that "a strap for a shoe is not copyrightable because, in part, the alleged design elements "keep the shoe attached to the wearer's feet [and] hold the material of the shoe together"); s*ee also Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-23494-CIV, 2011 WL 6202282, at *16 (S.D. Fla. Dec. 1, 2011), *aff'd sub nom. Olem Shoe Corp. v. Washington Shoe Corp*., 591 F. App'x 873 (11th Cir. 2015) (finding that, for a boot with a zebra-like pattern and a strap, "the protectable elements … are limited only to the conceptually severable patterned designs on the face of the boots and not any utilitarian functions of the boots"); *Khatib v. Red St. Ventures*, No. 11 C 3686, 2011 WL 3557307, at *1 (N.D. Ill. June 30, 2011) (dismissing a copyright claim relating to a functional "all purpose strap").

But even putting separability aside, it is equally inconceivable to imagine how a piece of fur material, without any specific pattern, design, or artistic features, can be considered an original work of art.  For at least these reasons, Puma's copyright claim for the Fur Slides fails to plead facts sufficient to support a plausible claim of copyright infringement and should be dismissed pursuant to Rule 12(b)(6).

### 5.    *Puma's Bow Slide Copyright Infringement Claim Fails*

A sandal with a bow on top is also not protectable.  The only element that Puma accuses of infringement is a "***casually knotted fabric bow with pointed endings atop a lined side strap that extends to the base of the sandal***."[13]  DE 13, ¶ 39.  Like the "wide plush fur strap," there is no legal basis for Puma's claim to a bow.  A "fabric bow with pointed endings atop a lined side strap" is not separable

---

[13] *See* fn. 14.

18

Case No. 2:17-CV-02523-PSG-E
SMRH:482789180.1   DEFENDANT FOREVER 21, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1   from the shoe because removing the strap changes the entire shape and contour of

2   the shoe.  The "lined side strap" affixes the shoe to a person's foot and is therefore

3   functional.  *See Eliya, Inc*., 2006 WL 2645196, at \*12.

4          Even assuming, *arguendo*, that the bow and strap could somehow be

5   separated from the shoe, the bow and strap would have to be independently

6   copyrightable as a work of art.  *See Star Athletica, 2017 WL 1066261,* at \*4.  This,

7   in effect, would provide Puma with exclusive rights in a fabric bow, albeit "casually

8   knotted," whether used as a hair bow, a gift wrap bow, or a bowtie.  There is nothing

9   original about a bow with a standard knot, especially a solid colored bow without

10  any patterns or other two-dimensional expression.  *Baby Buddies, Inc. v. Toys R Us,*

11  *Inc*., 611 F.3d 1308, 1320 (11th Cir. 2010) (holding that the "bow design is

12  commonplace," is "not original" to plaintiff, and "existed long before [plaintiff]

13  chose to include it" in its design, and therefore "fell short of even the low threshold

14  of originality required for copyright protection").  Accordingly, Puma's copyright

15  claim fails.

16         **D.      Counts IV and V Are Duplicative and Likewise Fail**

17         For the reasons set forth in Section II(B), *supra*, Counts IV and V must

18  likewise be dismissed.  Despite references to designs and trademarks in ¶¶ 76 and 79

19  in the FAC, Puma does not point to anything other than the same items identified in

20  its trade dress allegations.[14]  These counts should likewise be dismissed.

21

22

23

24

25

26

27  _____
[14] To the extent that the claims intend to reference the copyright and/or design patent

28  claims, they are preempted by the federal causes of action.  *Deckers Outdoor Corp.,* 45 F. Supp. 3d at 1188-89.

IV.   **CONCLUSION**

For all of these reasons, Puma's attempts to squelch competition through a misuse of intellectual property claims should be rejected, and the FAC should be dismissed without leave to amend.

Dated:  May 4, 2017              Respectfully submitted:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:      _____
            */s/ Laura L. Chapman*
         LAURA L. CHAPMAN

Attorneys for FOREVER 21, INC.

Dated:  May 4, 2017              Respectfully submitted:

THE WEBB LAW FIRM

By:      _____
            */s/ Kent E. Baldauf*
         KENT E. BALDAUF, JR.
         CECILIA R. DICKSON
         CHRISTIAN D. EHRET

Attorneys for FOREVER 21, INC.
*Pro Hac Vice Pending*