#45(7/3 HRG OFF)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV17-2523 PSG Ex | Date | June 29, 2017 |
| Title | Puma SE et al. v. Forever 21, Inc. | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |

| | |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **Order GRANTING in part and DENYING in part Defendant's Motion to Dismiss**

Before the Court is Defendant Forever 21, Inc.'s motion to dismiss Plaintiffs Puma SE and Puma North America, Inc.'s First Amended Complaint. Dkt. # 45. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the moving, opposing and reply papers, the Court GRANTS in part and DENIES in part the motion, WITH LEAVE TO AMEND.

## I. Background

This is an action arising out of Defendant Forever 21, Inc.'s ("Forever 21") alleged infringement of Plaintiffs Puma SE and Puma North America, Inc.'s ("Puma") intellectual property rights in a line of designer footwear known as the "Fenty" shoes. *See* Dkt. # 13, *First Amended Complaint* ("FAC"). Since 2014, Puma has collaborated with music artist Rihanna to design and market women's clothing and footwear. *Id.* ¶ 7. Rihanna has served as the ambassador for Puma's Fenty label, which contains the three shoe models at issue in this litigation: the "Creeper Sneaker," the "Fur Slide" and the "Bow Slide." *Id.* ¶¶ 8–10. The Creeper Sneaker, launched in 2015, is "a lace-up sneaker with suede uppers, a thick rubber sole consisting of ridged vertical tooling and grainy texture with a rubber ridge encircling the entire shoe immediately above the vertical ridged tooling." *Id.* ¶¶ 8, 23. Following the success of the Creeper, Puma launched the Fur Slide in April 2016. *Id.* ¶ 10. The Fur Slide is a slip-on shoe with a thick sole and "a wide plush fur strap" that extends to the base of the sandal, and has "satin foam backing." *Id.* ¶¶ 10, 24. Lastly, the Bow Slide was released in March 2017, and is also a slip-on shoe consisting of "a thick sandal base decorated by a wide, casually knotted satin bow with pointed endings atop the side strap in addition to satin foam backing." *Id.* ¶¶ 10, 26.

These three models (together, the "Fenty Shoes") "have enjoyed substantial and noteworthy success" and "routinely sell out within minutes of being posted on Puma's online

store." *Id.* ¶¶ 11, 20. Puma has filed applications for copyright registrations for each of the Fenty Shoes, *id.* ¶ 41, and the Creeper Sneaker is the subject of U.S. Patent No. D774.288, *id.* ¶ 18, Ex. A.

Puma alleges that Forever 21 seeks to "trade on the substantial goodwill of Puma, Rihanna, and the Fenty Shoes" by making "knock-off" copies of each of these shoes and offering them for sale on its website. *Id.* ¶ 15. Specifically, Puma alleges that Forever 21's Yoki Sneaker, Fur Slide, and Bow Slide are copies or counterfeits of Puma's Fenty Shoes and thus infringe on Puma's intellectual property rights. *Id.* ¶¶ 19, 25, 27. Puma asserts that in a side-by-side comparison, Forever 21's infringing shoes are "confusingly similar" to the Fenty Shoes. *Id.* ¶ 22. Puma provides the following images:

| **Puma's "Creeper"** | **Defendant's "Yoki"** |
|---|---|
|  |  |

| **Puma's "Fur Slide"** | **Defendant's "Fur Slide"** |
|---|---|
|  |  |

| **Puma's "Bow Slide"** | **Defendant's "Bow Slide"** |
|---|---|
|  |  |
|  |  |

*Id*. ¶¶ 23, 25, 27.

Puma filed suit against Forever 21 on April 4, 2017, alleging causes of action for: (1) design patent infringement, 35 U.S.C. § 271; (2) federal trade dress infringement, 15 U.S.C. § 1125(a); (3) copyright infringement, 17 U.S.C. § 501; (4) federal false designation of origin and unfair competition, 15 U.S.C. § 1125(a); and (5) state unfair competition, Cal. Bus & Prof. Code § 17200. *See generally FAC*. On April 7, 2017, the Court denied Puma's ex parte application for a temporary restraining order against Forever 21, finding Puma had "not shown that [it] is without fault in creating the crisis requiring *ex parte* relief." *See* Dkt. # 19. Shortly thereafter, Puma filed for a preliminary injunction to enjoin Forever 21 from infringing on Puma's intellectual property in the Fenty Shoes, but the Court denied the motion on grounds that Puma had not shown it would suffer irreparable harm in the absence of injunctive relief. *See* Dkt. # 57.

Forever 21 now moves to dismiss Puma's FAC in its entirety under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 45 ("Mot."). Puma opposes the motion, Dkt. # 58 ("Opp."). For the reasons stated below, Forever 21's motion is granted in part and denied in part, with leave to amend.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a

12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must first accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067–68 (9th Cir. 2009). The court, however, is not required to accept "legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must then determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679–80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

## III. Discussion

Forever 21 moves to dismiss each of the five causes of action asserted against it. The Court will address each cause of action in turn.

### A. Design Patent Infringement (First Cause of Action)

Puma owns a design patent for the Fenty Creeper Sneaker. *FAC* ¶ 18, Ex. A, U.S. Patent No. D774.288 ("'288 Patent").[1] The '288 Patent was issued on December 20, 2016 and claims an ornamental design for the shoe, described in eight illustrative figures depicting different views and details of the design. *See '288 Patent.* Puma provides the following comparison image in the FAC:

| **Plaintiff's Design (FIG 4, '288 Patent)** | **Defendant's "Yoki Sneakers"** |
|---|---|

[1] Puma has attached the '288 Patent as Exhibit A to the FAC. On ruling on a motion to dismiss, a court may properly take judicial notice of patents, as they are documents on the public record. *SCG Characters LLC v. Telebrands Corp.*, CV 15-00374 DDP AGR, 2015 WL 4624200, at *5 (C.D. Cal. Aug. 3, 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV17-2523 PSG Ex | Date | June 29, 2017 |
| Title | Puma SE et al. v. Forever 21, Inc. | | |



FIG. 4



*FAC* ¶ 19. To properly plead design patent infringement, Puma need only: (1) allege ownership of the patent, (2) name each defendant, (3) cite the patent, (4) state the means by which the defendant allegedly infringes, and (5) point to the sections of the patent law invoked. *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, CV 15-769 PSG SS, 2015 WL 12731929, at *6 (C.D. Cal. May 8, 2015) (citing *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013)). Puma satisfies each of these requirements by pleading ownership of the ‘288 Patent and alleging how Forever 21 has “blatantly copied” and offered for sale on its website the Yoki Sneaker that is substantially similar to the ‘288 Patent in violation of 35 U.S.C. § 271. *FAC* ¶¶ 15, 44–54; *Opp*. 3–4.

In its motion, Forever 21 argues that Puma’s design patent claim must fail because other figures of the ‘288 Patent reveal dissimilarities in the designs, pointing specifically to a trapezoidal figure above the heel of the Creeper that is absent from the Yoki Sneaker. *Mot*. 4–5. However, minor dissimilarities will not defeat a design patent infringement claim if, in consideration of the whole design, an ordinary observer views them as substantially the same. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed.Cir. 2010); *see also Amini Innovation Corp. v. Anthony California, Inc*., 439 F.3d 1365, 1371 (Fed. Cir. 2006) (noting that “the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features considered in isolation.”).

In support of their positions, both parties cite to *Egyptian Goddess Inc. v. Swisa, Inc*., a Federal Circuit decision that abandoned the point of novelty test and held that the ordinary observer test governs claims for patent infringement. *Egyptian Goddess*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (holding that the designs are “substantially similar” if, viewing the overall appearance of the designs, an “ordinary observer” would be deceived by the similarity between the claimed and accused [designs], “inducing him to purchase one supposing it to be the other.”). Here, Puma has sufficiently alleged that its Creeper Sneaker and Forever 21’s Yoki Sneaker bear a substantial degree of similarity when considering the overall design “such that an

ordinary observer would be deceived by the resemblance." *FAC* ¶ 19. Such allegations are sufficient at this stage of proceedings and do not warrant dismissal of Puma's design patent claim. *See Hall*, 705 F.3d at 1363 (pleading requirements for design patent infringement readily met where plaintiff alleged that resemblance between the design and accused product was "such as to deceive an ordinary observer."); *Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014) (finding design patent infringement properly pleaded where the plaintiff identified the specific patent at issue, alleged that the defendant infringed the design patent, and the Court found that "a comparison of the protected designs with the accused products demonstrates a sufficient visual similarity to at least render infringement of '189 Patent plausible.").

Forever 21 also moves for dismissal of the design patent claim so far as Puma asserts willful infringement. *See Mot.* 7. "California courts have taken the view that a plaintiff must plead pre-suit knowledge in order to adequately plead willful infringement." *Deckers Outdoor Corp.*, 45 F.Supp.3d at 1187 (citations omitted). "Actual knowledge – not constructive knowledge – is the criterion." *Id.* at 1188 (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010)); *see also Word to Info., Inc. v. Google Inc.*, 140 F. Supp. 3d 986, 989 (N.D. Cal. 2015) ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge.") (citation omitted).

As a threshold matter, the Court rejects Puma's argument that the Supreme Court decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.* overruled these pleading requirements. *See Opp*. 6. In *Halo*, the Supreme Court rejected the test for willful infringement established in *In re Seagate Technology* by abolishing the clear-and-convincing standard of proof, as well as the requirement of "a finding of objective recklessness in every case before district courts may award enhanced damages." 136 S.Ct. 1923 at 1932 (2016). Nothing in the *Halo* decision supports Puma's position that a plaintiff pleading willful patent infringement no longer need allege pre-suit knowledge of the patent. *See Nanosys, Inc. v. QD Vision, Inc.*, CV 16-01957, 2016 WL 4943006, at *8 (N.D. Cal. Sept. 16, 2016) ("*Halo* did not address pleading standards at the motion to dismiss stage."). To the contrary, the Supreme Court explained in its reasoning that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S.Ct. at 1933. And, other courts have noted that, "[e]ven after the United States Supreme Court's decision in *Halo*, '[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *Apple Inc. v. Samsung Electronics Co., Ltd.*, CV 12-00630 LHK, 2017 WL 2720220, at *8 (N.D. Cal. June 23, 2017) (citing *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016)).

Turning now to the FAC, Puma alleges that Forever 21 "has actual and/or constructive knowledge of the '288 Patent, and its actions constitute willful and intentional infringement." *FAC* ¶ 48. Puma further alleges that Forever 21 "knew . . . that its actions constituted

infringement of the '288 Patent." *Id*. Forever 21 contends these allegations are insufficient to raise a plausible inference of willful patent infringement. *Mot*. 7. The Court disagrees. Taking Puma's allegations as true and drawing all plausible inferences in its favor, as it is bound to do, the Court finds Puma's allegations that Forever 21 had actual knowledge of the '288 Patent and knew that its conduct constituted infringement sufficient to state a plausible claim of willful infringement at this stage of proceedings. *See Sony Corp. v. LG Elecs. U.S.A., Inc*., 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) (finding the plaintiff's allegations that defendants had actual knowledge of the patents at issue sufficient to state a plausible claim for willful infringement); *Sentry Prot. Prod., Inc. v. Eagle Mfg. Co*., 400 F.3d 910, 918 (Fed. Cir. 2005) (finding sufficient allegations that the "infringements have been willful and with full knowledge of the '611, and '781 patents."); *cf. Deckers Outdoor Corp.*, 45 F. Supp. 3d at 1188 (dismissing claim for willful infringement where plaintiff failed to allege that "JC Penney was actually aware of either of the patents-in-suit prior to producing and selling the accused products.").

Based on the foregoing, Forever 21's motion to dismiss Puma's first cause of action for design patent infringement is denied.

B. Federal Trade Dress Infringement (Second Cause of Action)

Puma asserts its second cause of action for trade dress infringement based on all three of the Fenty Shoes. *See FAC* ¶¶ 55–64. "A product's 'trade dress' is its total image and overall appearance; it includes 'features such as size, shape, color, color combinations, texture, or graphics.'" *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1045 n.2 (9th Cir. 1998) (quoting *Vision Sports, Inc. v. Melville Corp*., 888 F.2d 609, 613 (9th Cir. 1989)). To state a claim for trade dress infringement, a plaintiff must allege that: "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Enter. Inc*., 581 F.3d 1138, 1145 (9th Cir.2009) (quoting *Disc Golf Ass'n v. Champion Discs*, 158 F .3d 1002, 1005 (9th Cir. 1998). In evaluating the elements of a trade dress claim, "it is crucial that [courts] focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1259 (9th Cir. 2001).

Forever 21 argues that, as an initial matter, Puma has failed to specifically identify the alleged trade dress. *Mot*. 8–9. Further, Forever 21 contends that Puma fails to adequately plead that the trade dress is non-functional or that it has acquired a secondary meaning. *Id*. at 9–13. The Court first addresses Forever 21's argument that the alleged trade dress has been insufficiently identified and then turns to the elements of Puma's claim. Because the Court finds

that Puma has failed to adequately plead that its alleged trade dress is non-functional, the Court dismisses the claim, with leave to amend.

*i. Description of the Trade Dress*

"A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sleep Science Partners v. Lieberman*, No. 09-4200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (citing *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1174 (N.D. Cal. 2007); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. C 08-4397 WHA, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008)). In addition to the images displayed above, Puma provides the following descriptions of the trade dress of its Fenty Shoes:

The Creeper Sneaker "includes, at least, a lace-up sneaker with suede uppers, a thick rubber outer sole consisting of ridged vertical tooling and grainy texture with a rubber ridge encircling the entire shoe immediately above the vertical ridged tooling, and a deep "C" –shaped bowl for the foot to slide into." *FAC* ¶ 23.

The Fur Slide "includes, at least, a thick sandal base with a wide plush fur strap extending to the base of the sandal, and a satin foam backing, and shares the deep bowl for the foot (albeit in a sandal)." *Id*. ¶ 24.

The Bow Slide "includes, at least, a thick sandal base decorated by a wide, casually knotted satin bow with pointed endings atop the side strap in addition to satin foam backing, and the same deep bowl for the foot." *Id*. ¶ 26.

Forever 21 contends that this description "fails to adequately and clearly identify the 'total appearance'" of the trade dress at issue. *Mot*. 8–9. The Court disagrees. In *Deckers Outdoor Corp. v. Fortune Dynamic*, this Court found the alleged trade dress described with sufficient particularity where the plaintiff provided three images depicting the product at issue and identified features such as "overlapping panels on the boot shaft, curved edges on those overlapping panels with exposed fleece-type edges, and one or more prominent buttons on the shaft adjacent to the overlapping panels." *Deckers Outdoor Corp.*, 2015 WL 12731929, at *4. The Court noted that "[o]ther courts have concluded that listing the elements of a trade dress and providing an image of a product bearing the dress sufficiently identifies the trade dress over which plaintiff claims exclusive rights." *Id.*; *see, e.g.*, *Axis Imex, Inc. v. Sunset Bay Rattan, Inc., et al.*, CV 08-3931 RS, 2009 WL 55178, at *1, 3 (N.D. Cal. Jan. 7, 2009) (a "picture in combination with the pleadings regarding the shape, size, and placement of the bows and ribbons" on a nesting box storage system identified the trade dress with sufficient particularity to avoid dismissal).

Based on the provided descriptions and images of the Creeper Sneaker, Fur Slide, and Bow Slide, the Court finds that Puma has described the Fenty Shoes trade dress with sufficient particularity to give Forever 21 notice of the alleged trade dress and avoid dismissal on those grounds.

*ii. Non-Functionality*

In order to state a claim for trade dress infringement, Puma must plead that its alleged trade dress is non-functional. *Art Attacks Ink*, 581 F.3d at 1145. "A product feature is functional and cannot serve as a trademark 'if [the product feature] is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Kendall-Jackson Winery*, 150 F.3d at 1048 (quoting *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995) (internal quotation omitted)). "Functional features of a product are features 'which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *See Rachel v. Banana Republic, Inc.*, 831 F.3d 1503, 1506 (9th Cir. 1987) (internal quotation omitted). "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex*, 514 U.S. at 164.

The Ninth Circuit has identified several factors to consider "in determining whether trade dress is functional: '(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.'" *Clicks Billiards*, 251 F.3d at 1260 (quoting *Disc Golf Ass'n, Inc.*, 158 F.3d at 1006).

Forever 21 alleges that Puma has not pled facts supporting that the Fenty Shoes trade dress is non-functional because Puma fails to even address non-functionality in the FAC. *Mot.* 10. Puma, in its opposition, argues that non-functionality has been asserted in allegations such as the Bow Slide having a "casually knotted bow with pointed endings," or the Fenty Shoes being associated with their brand ambassador Rhianna. *See Opp*. 10. However, this Court has rejected the argument that non-functionality is implicitly pleaded when the complaint provides a description of an overall aesthetic look of a product. *See Deckers*, 2015 WL 12731929, at *4. "In light of the standard pleading requirement that plaintiffs support the elements of their claims with more than conclusory statements, the Court is persuaded by the approach of district courts that require plaintiffs to allege *how* a trade dress is non-functional." *Id.*; *see, e.g., GNI Waterman LLC v. A/M Valve Co. LLC*, CV 07-863 LJO TAG, 2007 WL 2669503, at *6 (E.D.

Cal. Sep. 7, 2007) (holding that defendant "is entitled to a more definite statement of non-functionality," that plaintiff "is not allowed to 'punt' on non-functionality, and [that plaintiff's] amended complaint is expected to address [the] absence of non-functionality allegations"). The Court thus holds that Puma has failed to sufficiently allege the element of non-functionality, especially when some of the claimed trade dress features perform a utilitarian function (*i.e.*, a thick sandal base or deep bowl for the foot).

Although the Court agrees with Puma that functionality is a question fact that is generally not suitable for resolution on a motion to dismiss, *see Morton v. Rank America*, Inc., 812 F. Supp. 1062, 1069 (C.D. Cal. 1993), Puma is not relieved of its obligation to "adequately plead non-functionality in order to state a claim for trade dress infringement." *Deckers*, 2015 WL 12731929, at *5. Therefore, the Court grants Forever 21's motion to dismiss the second cause of action for trade dress infringement, with leave to amend.[2]

C. Copyright Infringement (Third Cause of Action)

To establish a prima facie case of copyright infringement, Puma "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Forever 21 moves to dismiss the third cause of action on grounds that (1) Puma's allegations as to its copyright applications are lacking and (2) Puma's shoe designs are not copyrightable. *Mot.* 13–19. Because the Court finds Forever 21's first argument dispositive, the Court does not reach the question of copyrightability at this time.

*i.. Puma's Copyright Applications*

Forever 21 submits that dismissal of the copyright claim is warranted because the FAC only alleges that copyright applications exist, *see FAC* ¶ 41, "but neither the applications nor the corresponding deposits are attached." *Mot.* 14.

Under 17 U.S.C. § 411(a), "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a) ("§411(a)"). The Ninth Circuit has interpreted this to mean that "receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir.2010). Therefore, the Ninth Circuit allows infringement actions to proceed so

[2] Because Puma has failed to plead the first element in its trade dress cause of action, the Court does not reach the merits of the remaining two elements.

long as a complete application – consisting of the application for registration, fee and deposit – has been received prior to filing suit. *See id.*; 17 U.S.C. § 408(a) (stating that a claimant "may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee."); *Meribear Prods. Inc. v. Vail*, CV 14-0454 DMG RZ, 2015 WL 12766576, at *4 (C.D. Cal. Aug. 11, 2015) ("In order to sue under the Copyright Act in the Ninth Circuit, however, a plaintiff must show (1) an application, (2) payment of the necessary fees, and (3) the necessary deposits with the Library of Congress."); *see also* 2 NIMMER ON COPYRIGHT § 7.16[B][3][c] (2016) (noting that "in the absence of the copyright owner even having sent the requisite application (together with deposit and fee) to the Copyright Office, there is, under all viewpoints, a defect under the statute.").

Here, the FAC alleges that "Puma filed applications for copyright registration (Application Nos. 1-4761700988; 1-4762060275; and 1-4749915241) with the United States Copyright Office for the Fenty Copyrights." *FAC* ¶ 41. The FAC is otherwise silent as to the date the applications were filed, whether the fee was paid, whether the necessary deposits were included and whether the complete applications were received by the Copyright Office prior to filing suit. The FAC therefore falls short of adequately pleading receipt of a complete application, fee and necessary deposits by the Copyright Office prior to filing suit. *See Meribear Prods.*, 2015 WL 12766576, at *4.

Puma seeks to circumvent this deficiency in its opposition brief by first alleging new facts concerning receipt of the application materials and second, by pointing the Court to exhibits attached to a declaration submitted in support of its motion for a preliminary injunction. *See Opp*. 14. Both are improper. First, a "party cannot cure pleading deficiencies by inserting the missing allegations in a document that is not either a complaint or an amendment." *Freeney v. Bank of Am. Corp.*, CV 15-02376 MMM PJW, 2015 WL 4366439, at *17 (C.D. Cal. July 16, 2015) (citations omitted); *see also In re Turbodyne Technologies, Inc. Sec. Litig.*, CV 99-00697 MMM BQR, 2000 WL 33961193, *10 (C.D. Cal. Mar. 15, 2000) ("In deciding a motion to dismiss, courts may not 'take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).'").

As to the extrinsic documents referred to in opposition, courts generally look only to the face of the complaint and documents attached thereto in ruling on a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). While a court may consider materials such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003), Puma makes no effort to persuade the Court that these documents or the facts asserted therein are proper subjects of judicial notice. *In re Tyrone F. Conner Corp.*, 140

B.R. 771, 781 (Bankr. E.D. Cal. 1992) ("[A] party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice."). Moreover, even if properly subject to judicial notice, the referenced documents cannot be used to amend the FAC. *See, e.g., Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F.Supp.3d 1328, 1350 (C.D. Cal. 2014) ("Plaintiffs cannot utilize the [judicially noticed] documents to amend the complaint and defeat defendants' motions to dismiss.").

Rather than defend the adequacy of its allegations, Puma's reliance on newly alleged facts and extrinsic documents in its opposition brief suggests a tacit admission that the FAC lacks the requisite pleadings necessary to show compliance with § 411(a) of the Copyright Act. Therefore, because the FAC lacks allegations to support this threshold statutory requirement, Forever 21's motion to dismiss Puma's copyright infringement claim is granted, with leave to amend.

D. <u>Federal Unfair Competition and Designation of Origin (Fourth Cause of Action) and State Unfair Competition (Fifth Cause of Action)</u>

Puma's fourth cause of action asserts false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), *see FAC* ¶¶ 74–76, and its fifth cause of action asserts state unfair competition under Cal. Bus. & Prof. Code § 17200 ("UCL"), *id.* ¶¶ 77–80. Forever 21 moves to dismiss both causes of action on grounds that they are duplicative of the second cause of action for trade dress infringement and thus fail for the same reasons. *Mot*. 19. Puma does not address these causes of action or offer any response in its opposition, thus effectively conceding Forever 21's arguments supporting dismissal. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (deeming argument conceded where plaintiff failed to address it in opposition).

Accordingly, the Court grants Forever 21's motion to dismiss the fourth and fifth causes of action in Puma's FAC, with leave to amend.

V. <u>Conclusion</u>

Based on the foregoing, Forever 21's motion to dismiss is GRANTED in part and DENIED in part as follows:

- DENIED as to Puma's first cause of action for design patent infringement;

- GRANTED as to Puma's second cause of action for trade dress infringement, WITH LEAVE TO AMEND;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV17-2523 PSG Ex | Date | June 29, 2017 |
| Title | Puma SE et al. v. Forever 21, Inc. | | |

- GRANTED as to Puma's third cause of action for copyright infringement, WITH LEAVE TO AMEND;

- GRANTED as to Puma's fourth cause of action for false designation of origin and unfair competition under the Lanham Act, WITH LEAVE TO AMEND; and

- GRANTED as to Puma's fifth cause of action for violation of the UCL, WITH LEAVE TO AMEND.

**IT IS SO ORDERED.**